[Cite as *State v. Hines*, 2018-Ohio-1780.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2017-06-025 |
| Plaintiff-Appellee, | : | O P I N I O N<br>5/7/2018 |
| | : | |
| -vs- | : | |
| | : | |
| MICHAEL J. HINES, JR., | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2016CR000392

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, 2nd Floor, Batavia, OH 45103, for plaintiff-appellee

Flanagan Lieberman Hoffman & Swaim, Richard Hempfling, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Michael J. Hines, Jr., appeals his rape conviction in the Clermont County Court of Common Pleas.

{¶ 2} On June 30, 2016, the Clermont County Grand Jury returned a three-count indictment charging Hines with first-degree felony rape in violation of R.C. 2907.02(A)(1)(c), first-degree felony rape in violation of R.C. 2907.02(A)(2), and third-degree felony sexual

battery in violation of R.C. 2907.03(A)(2). On March 27, 2017, the state dismissed the sexual battery charge. The case proceeded to a three-day jury trial beginning on March 28, 2017.

{¶ 3} The complainant, K.B., testified that on the evening of March 11, 2016, she went to a bowling alley with her boyfriend, Brian, her friend Rachel, Rachel's boyfriend Eric, and her friend JD. K.B. stated the group bowled for a couple of hours. The group consumed alcoholic beverages inside the bowling alley and would periodically make trips to Rachel's car where the group finished a bottle of vodka. After bowling, the group went to a Clermont County bar, where Hines met up with the group. K.B. knew Hines through her friends Eric and Rachel, who managed the restaurant where Hines was employed as a cook. K.B. stated she was friendly with Hines and gave him a hug when he arrived. While at the bar, K.B. talked to Hines, but was not flirtatious. Around 1:00 a.m., the group left the bar and went to Rachel's apartment, which was about a mile away from the bar.

{¶ 4} An argument ensued between K.B. and Brian, prompting Brian to take a taxi home. K.B. stayed at Rachel's apartment. Shortly after arriving at the apartment, Rachel and Eric went to bed in Rachel's bedroom and JD fell asleep on the living room couch. K.B. and Hines stepped outside to smoke a cigarette. While outside, Hines consoled K.B. about her argument with Brian and told her she was beautiful. Hines leaned in to kiss K.B. K.B. told him to stop and pushed him away. K.B. then went to bed in Rachel's children's bedroom. Shortly after, Hines entered the children's room, claimed he could not sleep in the living room due to JD's snoring, and asked if he could sleep in the children's bedroom. K.B. agreed so long as Hines slept on the floor. Hines agreed and went to sleep on the floor, while K.B. slept in the bed.

{¶ 5} At approximately 4:00 a.m., K.B. awoke to a sharp pain inside her vagina. K.B. noticed her dress had been pulled up and her tights had been pulled down below her

buttocks. K.B. realized Hines was now laying behind her with his fingers inside her vagina. K.B. asked Hines what he was doing and told him to get off. Hines continued and K.B. again told him to stop and pushed him away. K.B. again asked Hines what he was doing. Hines stated, "[K.B.], I fucked up, I'm sorry." Hines returned to sleep on the floor. Although in a state of shock, K.B. eventually fell back asleep.

{¶ 6} The next morning, K.B. placed the clothing she wore the night before into a plastic grocery bag. She then went to her college class where she sent text messages to Rachel about what had transpired between her and Hines. Rachel then contacted Hines via text message. As pertinent to the issues raised in this appeal, the following text message exchange occurred between Rachel and Hines[1]:

> * * *
>
> Hines: I'm sorry I fucked up I said what the fuck to my self this morning I was fucked up I won't come around No more I apologize to you and [K.B.] lost good friends.
>
> * * *
>
> Rachel: Why would u think its ok to finger [K.B.] while she is sleeping after she told u over and over that she isnt into u like that?
>
> Rachel: And in my kids bed? I mean seriously?
>
> Hines: I wasn't thinking honestly I was drunk and I fucked up I wouldn't ever do anything like this I feel like a piece of shit I apologize for disrespecting u * * * like that

{¶ 7} Later that day, Rachel accompanied K.B. to the police station to file a report of the incident with Hines. K.B. provided the police with the grocery bag containing her clothes. Officer Keith Puckett of the Union Township Police Department submitted the clothing to the Ohio Bureau of Criminal Investigation ("BCI") for DNA testing. The testing

---

1. We note the text message exchange and the controlled call detailed below appear as written by the parties and in the transcript, including all spelling, spacing, grammar, and punctuation.

revealed Y-STR DNA on the inside of K.B.'s tights and that Hines could not be excluded as a source. The BCI examiner testified she would have to test 38 people before she expected to find another match.

{¶ 8} Next, K.B. went to the hospital where she was examined by a registered nurse employed by SANE of Butler County. The nurse testified that the examination yielded no DNA other than K.B.'s and K.B.'s vagina showed no signs of tearing. The nurse explained that finding no injury from a sexual assault is not uncommon because the vaginal area is elastic and can stretch. The nurse stated that K.B. did not immediately disclose digital penetration, which she noted on an intake form. However, once K.B. felt more comfortable she disclosed Hines inserted his fingers in her vagina.

{¶ 9} A few days later, at the request of the police, K.B. conducted a recorded controlled phone call with Hines, which the state played during trial. The controlled phone call contained, in relevant part, the following discussion between K.B. and Hines:

> * * *
>
> K.B.: * * * Well, [Hines], I really want to just put this all behind me, but I really * * * I need you to tell me what happened Friday night.
>
> Hines: I * * * was pretty drunk.
>
> K.B.: Okay, but what * * * did you do?
>
> Hines: * * * I don't know. I * * * tried to get with you.
>
> K.B.: Okay. But what do you mean by that? Like, what did you do?
>
> Hines: I was fucking with you while you were sleeping.
>
> K.B.: * * * what do you mean by you were fucking with me while I was sleeping?
>
> Hines: I * * * mean I don't know what you want me to tell you.
>
> K.B.: Well, I'm pretty sure I woke up to you fingering me while I

- 4 -

was sleeping; is that right?

Hines:  Yeah.

* * *

K.B.:   * * * But, [Hines], why would take advantage of me like that?

Hines:  I – I'm sorry.  I –

K.B.:  You tried to kiss me * * * at the start of the night, and I pushed you away and told you no, so why would you try to do something especially while I'm sleeping?

Hines:  I understand.  * * * I fucked up.  I mean * * * I don't know why I did it.  I really apologize though.  Like, that's not me.  You know what I mean?   Like, I wouldn't want to do that to you.  Because, like, you're my friend.  For real.  I apologize.  I fucked up.

K.B.: [Hines], you put * * * your fingers in me while I was asleep.  Like, what –

Hines:  Right.  I mean I don't * * * know what I was thinking.  Honestly, like * * * I don't.

K.B.:  I mean there's just really no excuse for it.  I just want to put it behind me, and I just needed * * * to hear from you what happened.

Hines:  * * * I guess I just couldn't take no for an answer.  You know what I mean?

K.B.:  You guess what?

Hines:  I was horny, you know.  * * * I'm sorry.  I didn't know what else to say, you know?

* * *

K.B.:  [Hines], you took * * * complete advantage of me when I was intoxicated and when I was sleeping.

Hines:  I understand.  I apologize.  I really do.  I fucked up.

* * *

K.B.:  * * * did you just think I would wake up and be okay with

it or I mean * * * what were you thinking?

Hines: I wasn't thinking. That's why we're in the situation we are now. I wasn't thinking at all. I fucked up.

* * *

K.B.: I was sleeping.

Hines: I know you was.

K.B.: I woke up to that.

* * *

{¶ 10} Puckett testified he spoke with Hines a few days later. Hines explained to Puckett that he tried to "get with" K.B. while she was sleeping. Hines slept on the floor and K.B. slept on the bed in Rachel's children's room. Hines explained that in his attempt to get with K.B. he "tried to kiss her and wake her up a little bit." Hines shook her and "tried to rub on her" by "caress[ing] her body." He did not recall inserting his fingers inside her vagina. Puckett asked Hines if K.B. was lying and Hines stated, "I mean, honestly I'm not sure," but that "[s]he's probably lying." Hines denied any memory of putting his hands down K.B.'s pants, rather claiming that he "was rubbing like on her stomach and on her leg." Hines stated he did not touch her vagina over or under her clothing.

{¶ 11} T.O., a former acquaintance of Hines, testified that in 2016, after a night of drinking with friends, she awoke to Hines rubbing her vagina outside of her clothing. T.O. informed Hines she did not want him to rub her vagina and Hines persisted, asking, "are you sure?" T.O. again told Hines no and to get off her. Hines left the room shortly thereafter. Prior to T.O.'s testimony and during final instructions, the trial court provided the jury a limiting instruction that the testimony was not to be considered as evidence of Hine's character or conformity with such character. The trial court instructed the jury that it was only to consider the evidence for purposes of establishing Hine's motive, intent, knowledge,

or absence of mistake or accident.

{¶ 12} Hines testified on his own behalf. Hines testified he met the group out for drinks and rode back with them to Rachel's apartment. Hines corroborated K.B.'s testimony that he discussed her relationship turmoil outside over a cigarette and attempted to kiss her. Hines further testified that he attempted to sleep in the living room, but could not do so due to JD's snoring. Therefore, he entered Rachel's children's bedroom and asked K.B. if he could sleep there. K.B. answered affirmatively and Hines slept on the bed with K.B. Hines stated that around 3:30 a.m., he wrapped his arm around K.B. and "cuddled up next to her" and she scooted back toward him. Hines proceeded to rub on her outer and inner thigh. K.B. told him to stop, so he moved to the bedroom floor. Hines categorically denied inserting his fingers into K.B.'s vagina and pulling her tights down. When Hines awoke that morning, K.B. had already left Rachel's apartment.

{¶ 13} Hines explained that the statements he made during his text message conversation with Rachel, the controlled call with K.B., and his interview with the police, were motivated by his desire to prevent future adverse employment decisions because Rachel and Eric were managers at his place of work. On cross-examination, Hines stated he lied when he answered affirmatively to a question regarding digital penetration on the controlled call. With respect to T.O.'s testimony, Hines testified he did enter her bedroom, but did not get into bed with her. Hines explained that he rubbed on her thigh and asked, "if anything was happening." T.O. responded no and Hines exited the bedroom.

{¶ 14} Following jury deliberations, the jury found Hines guilty of rape in violation of R.C. 2907.02(A)(1)(c). The jury was unable to reach a verdict on the other rape count and it was dismissed without prejudice. The trial court sentenced Hines to a seven-year mandatory prison term, five years of postrelease control, and classified him as a Tier III sex offender.

{¶ 15} Hines timely appeals his conviction, setting forth three assignments of error. For ease of discussion we first address the second assignment of error.

{¶ 16} Assignment of Error No. 2:

{¶ 17} THE TRIAL COURT ERRED IN PERMITTING THE JURY TO CONSIDER SLEEP TO BE A "PHYSICAL CONDITION" IN DETERMINING WHETHER THE COMPLAINANT'S ABILITY TO RESIST OR CONSENT WAS SUBSTANTIALLY IMPAIRED DUE TO A MENTAL OR PHYSICAL CONDITION.

{¶ 18} Hines was convicted of rape in violation of R.C. 2907.02(A)(1)(c), which provides, in pertinent part:

> [n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

{¶ 19} The state alleged that K.B. was asleep at the time of the alleged sexual assault and that this "physical condition" substantially impaired her ability to resist. The trial court instructed the jury that "sleeping is, if proven, a physical condition" for purposes of the jury's consideration of whether K.B.'s ability to resist was "substantially impaired because of a physical condition." Directing our attention to the legislative history of 1993 Sub. S.B. No. 31, which added subdivision R.C. 2907.02(A)(1)(c) to the rape statute, Hines asserts that the General Assembly did not intend that sleep be considered a "physical condition" substantially impairing a person's ability to resist under the statute. Rather, Hines claims that the legislative history of the statute reveals that it was intended to apply only to impairments resulting from handicap, age, or medical condition. Thus, Hines asserts that the jury instruction provided by the trial court on the issue was reversible error.

{¶ 20} We need not consult the legislative history of the 1993 amendment to R.C. 2907.02, as the language in the statute is free of ambiguity and doubt. *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 12 (explaining that the question is not what the general assembly intended to enact, but rather what is the meaning of that which it did enact). The Ohio Supreme Court defines "substantial impairment" in terms of its common usage and has held that "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of [the] conduct or to control [the] conduct." *State v. Zeh*, 31 Ohio St.3d 99, 103-04 (1987). Additionally, we recently settled the issue and held that "sleep" is a mental or physical condition, which is sufficient to substantially impair a victim's ability to consent to or resist sexual conduct or contact. *State v. B.J.T.*, 12th Dist. Warren No. CA2016-12-106, 2017-Ohio-8797, ¶ 31. This holding is consistent with several other districts. *State v. Jones*, 5th Dist. Richland No. 2016 CA 0043, 2017-Ohio-1114, ¶ 46; *State v. H.H.*, 10th Dist. Franklin No. 10AP-1126, 2011-Ohio-6660, ¶ 10; *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 50; *State v. Younger*, 8th Dist. Cuyahoga No. 86235, 2006-Ohio-296, ¶ 28, *reversed in part on other grounds by State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856; *State v. Wright*, 9th Dist. Medina No. 03CA0057-M, 2004-Ohio-603, ¶ 6.

{¶ 21} Therefore, the trial court did not err by instructing the jury that sleep is a physical condition and Hines' second assignment of error is overruled.

{¶ 22} Assignment of Error No. 1:

{¶ 23} THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY WITH REGARD TO LESSER INCLUDED OFFENSES.

{¶ 24} Hines contends the trial court abused its discretion by refusing to instruct the jury on sexual battery, gross sexual imposition, and sexual imposition, as lesser included offenses of the rape offense. In so doing, Hines argues a reasonable jury could have found

that the evidence did not support one or more elements of rape under R.C. 2907.02(A)(1)(c), but did support the elements of sexual battery, pursuant to R.C. 2907.03(A)(3), sexual imposition, pursuant to R.C. 2907.06(A)(1) and (3), and gross sexual imposition, pursuant to R.C. 2907.05(A)(5). Upon examination, we find that sexual battery, pursuant to R.C. 2907.03(A)(3), and sexual imposition, pursuant to R.C. 2907.06(A)(1) and (3), are not lesser included offenses of rape, pursuant to R.C. 2907.02(A)(1)(c), and that the evidence did not support an instruction on gross sexual imposition, pursuant to R.C. 2907.05(A)(5).

{¶ 25} In considering whether an instruction upon a lesser offense should be given, a trial court must first determine whether an offense is a lesser included offense of the crime charged. *State v. Evans*, 122 Ohio St. 3d 381, 2009-Ohio-2974, ¶ 13. If that inquiry is answered affirmatively, then the court must proceed to determine whether the evidence in the case supports an instruction on the lesser included offense. *Id.* This assignment of error raises issues involving each of the foregoing inquiries.

{¶ 26} The test for determining if an offense is a lesser included offense of another crime is "whether one offense carries a greater penalty than the other, whether some element of the greater offense is not required to prove commission of the lesser offense, and whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed." *Id.* at ¶ 26. Our analysis of whether sexual battery, pursuant to R.C. 2907.03(A)(3), sexual imposition, pursuant to R.C. 2907.06(A)(1) and (3), and gross sexual imposition, pursuant to R.C. 2907.05(A)(5), are lesser included offense of rape, pursuant to R.C. 2907.02(A)(1)(c), will be confined to the third prong of the test, to wit, "whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed." *Evans* at ¶ 26.

{¶ 27} The test for determining if an offense is a lesser included offense of another does not involve a consideration of the facts of the offense. *Id.* at ¶ 13. In this regard, *Evans*, rejecting the state's invitation to abandon precedent, specifically retained prior holdings that "the evidence presented in a particular case is irrelevant to the determination of whether an offense, as statutorily defined, is necessarily included in a greater offense." *Id.* However, *Evans* also clarified that the comparison of the statutory definitions of offenses to determine whether one is a lesser included offense of another,

> is not a word game to be performed by rote by matching the words chosen by the legislature to define criminal offenses. * * * The proper overall focus is on the nature and circumstances of the offenses as defined, rather than on the precise words used to define them."

*Id.* at ¶ 22, citing *State v. Thomas*, 40 Ohio St.3d 213, 216-17 (1988).

{¶ 28} Summarizing, the Ohio Supreme Court stated that the test "requires a comparison of the elements of the respective offenses in the abstract to determine whether one element is the functional equivalent of the other. If so, and if the other parts of the test are met, one offense is a lesser included offense of the other." *Evans* at ¶ 25, *discussing State v. Deem*, 40 Ohio St.3d 205 (1988).

{¶ 29} If it is determined that an offense is a lesser included offense of the crime charged, the evidence in the case becomes relevant to the determination of whether an instruction on the lesser included offense is warranted in the case. An instruction on a lesser included offense is warranted only "[i]f the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged and for the state on the remaining elements, which by themselves would sustain a conviction on a lesser-included offense * * *." *State v. Kilby*, 50 Ohio St.2d 21, 24-25 (1977). Thus, "[a] jury instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal of the crime charged and a

conviction on the lesser included offense." *State v. Tolle*, 12th Dist. Clermont No. CA2014-06-042, 2015-Ohio-1414, ¶ 11, citing *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 192. In making its decision, the trial court must view the evidence in a light most favorable to the defendant. *Id.* A jury instruction on a lesser included offense is not required where the evidence presented at trial does not meet this test. *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 37. Rather, there must be "sufficient evidence" to "allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense." (Emphasis sic.) *Trimble* at 192. However, an instruction on a lesser included offense is not required "every time 'some evidence', however minute, is presented going to a lesser included (or inferior-degree) offense [or] no trial judge could ever refuse to give an instruction on a lesser included (or inferior degree) offense." *State v. Shane*, 63 Ohio St.3d 630, 633 (1992).

{¶ 30} We review a trial court's decision to not instruct the jury on a lesser included offense for an abuse of discretion. *State v. Doby*, 12th Dist. Butler No. CA2013-05-084, 2014-Ohio-2471, ¶ 17. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 14.

{¶ 31} The state charged and the jury convicted Hines of rape in violation of R.C. 2907.02(A)(1)(c), which provides, in pertinent part:

> [n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

{¶ 32} Sexual battery is defined by R.C. 2907.03(A)(3), as follows: "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other person submits because the other person is unaware that the act is being committed."

{¶ 33} Hines argues that a sexual battery instruction pursuant to R.C. 2907.03(A)(3) was appropriate as a lesser included offense of rape pursuant R.C. 2907.02(A)(1)(c). Specifically, Hines asserts that the jury could have reasonably found that being asleep was not a physical condition substantially impairing K.B.'s ability to resist, as provided by the rape statute, but that being asleep did render her unaware of the assault, as provided by the sexual battery statute.

{¶ 34} Hine's argument is based upon the mistaken premise that the "unawareness" element of sexual battery is included within the "physical condition" and "substantial impairment" elements of rape or that one element is the functional equivalent of the other, as provided in *Evans*. It is easy to conceive of situations where a person may be unable to resist or consent due to a physical or mental condition, but, nonetheless, is aware of being sexually assaulted. Being asleep is one example. Although sleep diminishes a person's ability to react to external stimuli, it does not render the person unaware of external stimuli. Otherwise, alarm clocks would be useless. The evidence in this case unequivocally illustrates this point, as K.B. was aware of being sexually assaulted, as the pain associated with the assault woke her. Simply stated, though a sleeping person is defenseless, they are not senseless. Thus, the "unawareness" element of sexual battery is not the "functional equivalent" of the "physical condition" and "substantial impairment" elements of rape. Pursuant to the third prong of the *Evans* test, sexual battery is not a lesser included offense of rape, because rape, pursuant to R.C. 2907.02(A)(1)(c), may be committed without also committing sexual battery, pursuant to R.C. 2907.03(A)(3). Hence, the trial court did not

err in refusing to instruct the jury on sexual battery.

{¶ 35} R.C. 2907.06(A) governs sexual imposition and provides, in pertinent part:

> [n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> (1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.
>
> * *
>
> (3) The offender knows that the other person, or one of the other persons, submits because of being unaware of the sexual contact.

{¶ 36} Sexual imposition pursuant to R.C. 2907.06(A)(1) is not a lesser included offense of rape pursuant to R.C. 2907.02(A)(1)(c). R.C. 2907.06(A)(1) requires knowledge by the offender that the sexual contact is offensive to the victim, or the offender is reckless in that regard. Pursuant to the *Evans* test, there is no element of rape pursuant to R.C. 2907.02(A)(1)(c), that is the "functional equivalent" of the "sexual contact is offensive to the other person" element of sexual imposition, pursuant to R.C. 2907.06(A)(1). As a matter of fact, the overwhelming majority of sexual assault victims will be offended by the assault. As a matter of law, the fact of being offended by a sexual assault is irrelevant, as *Evans* makes clear that the evidence in the case is not to be considered in the initial inquiry of whether an offense is lesser included offense of the crime charged. Thus, the trial court did not abuse its discretion in refusing to provide a jury instruction on sexual imposition pursuant to R.C. 2907.06(A)(1).

{¶ 37} Neither is sexual imposition pursuant to R.C. 2907.06(A)(3), a lesser included offense of rape pursuant to R.C. 2907.02(A)(1)(c). Sexual imposition, as defined by R.C. 2907.06(A)(3), includes the same "unawareness" element as sexual battery pursuant to

- 14 -

R.C. 2907.03(A)(3). Our above discussion of sexual battery as a lesser included offense of rape demonstrates an impaired ability to resist and being unaware are distinct concepts. Thus, the trial court did not abuse its discretion in refusing to provide a jury instruction on sexual imposition pursuant to R.C. 2907.06(A)(3).

{¶ 38} R.C. 2907.05(A)(5) defines gross sexual imposition and provides, in pertinent part:

> [n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [t]he ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

{¶ 39} The sole difference between the pertinent rape and gross sexual imposition subsections is that rape requires proof of sexual conduct whereas gross sexual imposition requires proof of sexual contact. As the definitions set forth below make clear, "sexual conduct," necessarily includes "sexual contact." Therefore, pursuant to the *Evans* test, gross sexual imposition pursuant to R.C. 2907.05(A)(5) is a lesser included offense of rape pursuant to R.C. 2907.02(A)(1)(c).

{¶ 40} R.C. 2907.01(A) defines "[s]exual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(B) defines "[s]exual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a

female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶ 41} Hines contends the trial court erred in not providing an instruction on gross sexual imposition because there was evidence for the jury to reasonably conclude no "sexual conduct" occurred. Specifically, Hines relies on his testimony denying having digitally penetrated K.B.'s vagina, a lack of physical evidence, DNA evidence found on the inside of K.B.'s tights, but not inside her vagina, and his own admission that he rubbed her thigh. Hines argues that collectively this evidence reasonably supports a finding of "sexual contact," and thus, an instruction on gross sexual imposition was warranted.

{¶ 42} After a thorough review of the record, viewing the evidence in a light most favorable to Hines, we find there was not sufficient evidence to allow the jury to reasonably reject the greater offense of rape and find the defendant guilty of gross sexual imposition.

{¶ 43} The state narrowly focused and premised its entire case on Hines digitally penetrating K.B.'s vagina. The bill of particulars demonstrates this point, describing the offense, in pertinent part, as follows: "Defendant was sleeping on the floor of the homeowner's daughter['s bedroom] and the victim, K.B., was sleeping in the daughter's bed. K.B. had drank about 4-5 drinks that evening. K.B. awoke to find Defendant's fingers in her vagina." In his trial testimony, Hines admitted to rubbing K.B.'s thigh, but unequivocally denied pulling down her tights and penetrating or rubbing K.B.'s vagina. In other words, Hines offered a complete denial of the essence of the state's case that he had digitally penetrated K.B.'s vagina.

{¶ 44} In *State v. Johnson*, 36 Ohio St.3d 224 (1988), the Ohio Supreme Court affirmed a trial court's refusal to provide an instruction on gross sexual imposition in a rape prosecution. "Although it was clear that sexual contact also occurred, the state chose to narrowly focus its case on the rape charges." *State v. Cruz*, 12th Dist. Butler No. CA2012-03-059, 2013-Ohio-215, ¶ 20, analyzing *Johnson* at 226. Further, the defendant completely

denied the rape offenses and the state's case depended upon the victim's testimony regarding penetration because no physical evidence existed. *Johnson* at 227. The Ohio Supreme Court held that a criminal defendant is not entitled to an instruction regarding gross sexual imposition as a lesser included offense where the defendant denied participation in the alleged offense, and the jury, in its consideration of the defense "could not reasonably disbelieve the victim's testimony as to 'sexual conduct' and, at the same time, consistently and reasonably believe her testimony of mere 'sexual contact.'" (Citations omitted.) *Id.* at paragraph two of the syllabus. Thus, if the trial court provided such instruction, then it would allow the jury to make an unreasonable conclusion. *Id.* at 227.

{¶ 45} While Hines did not assert a complete denial as in *Johnson* and *Cruz*, in the sense that he did not deny that anything happened on the night in question, he did completely deny the narrow focus of the case based upon K.B.'s allegations. In his testimony, Hines admitted to rubbing K.B.'s thigh, denied rubbing, much less penetrating, K.B.'s vagina and offered an explanation for his extra-judicial statements to the contrary. In contrast, K.B. testified unequivocally that Hines placed his fingers within her vagina. As in *Johnson*, there was no indication that K.B. could not differentiate between Hines' merely rubbing her thigh and digital penetration. *Johnson* at 227. Although Hines could have been charged with gross sexual imposition for rubbing K.B.'s thigh, it was a distinct act from the digital penetration that K.B. testified about. Although Hines was willing to admit committing another offense, he denied committing the offense for which he was indicted. Therefore, the trial court did not abuse its discretion by offering the jury the choice to convict Hines of rape if it believed K.B. or to acquit if it did not.

{¶ 46} Additionally, the record reflects many discrepancies in Hine's statements, such as his text message exchange with Rachel where he does not deny digitally penetrating K.B., the controlled call where he admitted to digitally penetrating K.B., and his

statement to the police in which he claimed no memory of touching K.B.'s vagina before eventually denying any touching of K.B.'s vagina. Physical evidence also corroborated K.B.'s version of events, as the inside of her tights contained DNA evidence, which the BCI examiner testified she would have to test 38 people before she expected to find another match.

{¶ 47} Based on the foregoing, there is no reasonable basis for the jury to find Hines merely engaged in sexual contact versus sexual conduct. The only evidence tending to support Hines' claim against digital penetration is his trial testimony and a checked box on an intake form indicating no digital penetration by the SANE nurse, which she later explained was due to K.B. being uncomfortable at the beginning of her examination, and that K.B. eventually informed her regarding the digital penetration. *See State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 195-96 (refusing lesser included instruction based upon the quality of the evidence advanced in support of such an instruction and the evidence to the contrary). Thus, construing the evidence in a light most favorable to Hines, we find the trial court did not abuse its discretion by not providing a gross sexual imposition instruction.

{¶ 48} Accordingly, Hines' first assignment of error is overruled.

{¶ 49} Assignment of Error No. 3:

{¶ 50} THE TRIAL COURT ERRED IN ADMITTING "OTHER ACTS" EVIDENCE UNDER EV[ID].R. 404(B) AND R.C. 2945.59.

{¶ 51} Hines argues the trial court abused its discretion in admitting the testimony of T.O. that, on a prior occasion, she awoke to find Hines rubbing her vagina over her clothes, because its probative value was substantially outweighed by its prejudicial effect. Hines contends the trial court erred in permitting the jury to consider the evidence for purposes of establishing Hine's motive, intent, knowledge, or absence of mistake or accident, because

- 18 -

these purposes were not at issue in the case. Rather, the only issue was whether Hines digitally penetrated K.B.

{¶ 52} "A trial court has broad discretion in the admission and the exclusion of evidence and unless it clearly abused its discretion and appellant is materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9, citing *State v. Finnerty*, 45 Ohio St.3d 104, 109 (1989). "'Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character.'" *State v. Ward*, 12th Dist. Clermont No. CA2013-07-059, 2014-Ohio-990, ¶ 19, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15. However, the Ohio Supreme Court has promulgated certain exceptions to the common law regarding the admission of "other acts" evidence. Those exceptions are contained in Evid.R. 404(B), which states:

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 53} Furthermore, for evidence to be admissible pursuant to Evid.R. 404(B), there must be substantial proof the alleged other acts were committed by the defendant and the evidence must tend to prove one of the enumerated exceptions. *State v. Lowe*, 69 Ohio St.3d 527, 530 (1994); *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 37. "Substantial proof" is not proof "beyond a reasonable doubt." *Jones* at ¶ 37.

{¶ 54} Additionally, R.C. 2945.59 provides that

> [i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or

intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ 55} The Ohio Supreme Court in *Williams* outlined a three-part test for courts to apply when considering the admissibility of other acts evidence. *Williams* at ¶ 19-20. First, the court should "consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. Second, the court should determine if "evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* Third, the court should "consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.*, citing Evid.R. 403.

{¶ 56} After thoroughly reviewing the record, we find the trial court did not abuse its discretion in admitting T.O.'s testimony for a limited purpose. The trial court found T.O.'s testimony was relevant to establish Hine's motive, intent, knowledge, or absence of mistake or accident. Additionally, the other acts evidence was particularly probative of Hines' "scheme, plan, or system in doing the act in question" based upon the marked similarity between what is alleged in this case and T.O.'s account of her encounter with Hines.

{¶ 57} T.O. testified that in 2016 she met some friends, including Hines, at a nearby bar for drinks. Eventually, the group left the bar and went back to T.O.'s residence. T.O. went to bed shortly after arriving home and awoke to Hines standing over her and rubbing her vagina over her clothing. T.O. testified she asked Hines what he was doing, and he

responded, "what? Do you not want me to do this?" T.O. stated, "no", and after a brief pause, Hines began rubbing her vagina again and asked if she was sure. T.O. again stated, "no" and Hines left the bedroom.

{¶ 58} In the present case, Hines claimed he was trying to "get with" K.B. while she was sleeping. Hines told the police he was trying to kiss her, rub on her, and "wake her up a little bit." Thus, the purpose for this interaction was to precipitate a sexual encounter. Likewise, regarding T.O.'s testimony, Hines rubbed her erogenous zone with the purpose to spark a sexual encounter, which is clearly indicated by the rubbing coupled with the verbal exchange between T.O. and Hines. Moreover, both encounters followed a night of drinking with friends where Hines engaged in alleged sexual contact or conduct with a sleeping girl. Therefore, this evidence was relevant to establish Hine's motive, intent, knowledge, or absence of mistake or accident.

{¶ 59} Additionally, T.O.'s testimony was not admitted to demonstrate Hines' character or conformity with such character. The trial court specifically instructed the jury both before T.O.'s testimony and during final jury instructions that it was not to consider the testimony to prove character or that Hines acted in conformity with such character. Rather, the jury should only consider the evidence for the purposes stated above. *State v. Mills*, 12th Dist. Clermont No. CA2015-12-101, 2016-Ohio-6985, ¶ 18 (stating a trial court minimalizes potential prejudice by providing limiting instructions before testimony and again before submitting the case to the jury). There is a presumption "that the jury has followed the instructions given to it by the trial court." *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 194. Any resulting prejudice from the admission of T.O.'s testimony was minimalized by the trial court's limiting instructions and the record does not reflect any indication that the jury did not follow the trial court's instructions.

{¶ 60} Accordingly, the trial court did not abuse its discretion in admitting T.O.'s

- 21 -

testimony and Hines' third assignment of error is overruled.

{¶ 61} Based upon the foregoing, we find no error in the trial court's instruction to the jury that "sleep" may be considered a "physical condition" pursuant to R.C. 2907.02(A)(1)(c), the trial court's refusal to instruct the jury upon sexual battery in violation of R.C. 2907.03(A)(3), gross sexual imposition in violation of R.C. 2907.05(A)(5), and sexual imposition in violation of R.C. 2907.06(A)(1) and (3), as lesser included offenses of rape, or in the admission of the "prior bad acts" evidence. We affirm the trial court and Hines' conviction of rape in violation of R.C. 2907.02(A)(1)(c).

S. POWELL, P.J., and HENDRICKSON, J., concur.