[Cite as *State v. Brisco*, 2024-Ohio-2675.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

DANIEL A. BRISCO,

    DEFENDANT-APPELLANT.

CASE NO. 1-23-48

O P I N I O N

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR2022 0169**

**Judgment Affirmed**

**Date of Decision: July 15, 2024**

APPEARANCES:

    *Jessica Manungo* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**BALDWIN, J.**

{¶1} Defendant-appellant, Daniel A. Brisco ("Brisco"), brings this appeal from the July 10, 2023 judgment of the Allen County Common Pleas Court sentencing him to an indefinite prison term of 8-12 years after a jury convicted him of rape in violation of R.C. 2907.02(A)(1)(c), a first degree felony. On appeal, Brisco argues that there was insufficient evidence presented to convict him, that his conviction was against the manifest weight of the evidence, and that the trial court erred by instructing the jury that "sleep" is a mental or physical condition that substantially impairs a victim's ability to consent to sexual conduct. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On June 16, 2022, Brisco was indicted for one count of rape in violation of R.C. 2907.02(A)(1)(c), a first degree felony, and one count of rape in violation of R.C. 2907.02(A)(2), a first degree felony. It was alleged that Brisco vaginally penetrated his half-sister, A.B., with his penis while she was sleeping.

{¶3} Brisco pled not guilty to the charges and proceeded to a jury trial. After the evidence was presented, the jury acquitted Brisco of rape by force (R.C. 2907.02(A)(2)), but convicted him of rape pursuant to R.C. 2907.02(A)(1)(c).

**{¶4}** On July 10, 2023, Brisco was sentenced to serve an indefinite prison term of 8-12 years. A judgment entry memorializing his conviction and sentence was filed that same day. It is from this judgment that he appeals, asserting the following assignments of error for our review.

**First Assignment of Error**

**Daniel Brisco's conviction for rape is not supported by sufficient evidence.**

**Second Assignment of Error**

**Daniel Brisco's conviction for rape is against the manifest weight of the evidence.**

**Third Assignment of Error**

**The trial court erred in permitting the jury to consider sleep to be a mental or physical condition to determine whether A.B.'s ability to resist or consent to sexual conduct was substantially impaired.**

**{¶5}** The first and third assignments of error are interrelated; therefore, we will address them together.

*First and Third Assignments of Error*

**{¶6}** In his first assignment of error, Brisco argues that there was insufficient evidence presented to convict him of rape. More specifically, he contends that, as a matter of law, sleep does not constitute a mental or physical condition that would substantially impair A.B.'s ability to resist or consent to sexual conduct. In his third assignment of error, Brisco argues that the trial court erred by instructing the jury

that sleep is a mental or physical condition that substantially impaired A.B.'s ability to resist or consent.

## Standard of Review

**{¶7}** "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52; *State v. Groce*, 2020-Ohio-6671, ¶ 6. Therefore, our review is de novo. *In re J.V.*, 2012-Ohio-4961, ¶ 3. In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus (superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102, (1997), fn. 4) following *Jackson v. Virginia*, 443 U.S. 307 (1979). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

## Controlling statute

**{¶8}** Brisco was convicted of Rape in violation of R.C. 2907.02(A)(1)(c), which reads as follows:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> * * *

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

### Evidence Presented by the State

{¶9} A.B. was born in July of 2002. She did not have a relationship with her father.

{¶10} In 2019, A.B.'s estranged father died. At the time that her father passed, A.B. was not even aware that her father was still living. A.B. traveled to Ohio for her father's funeral. While she was there she met Brisco for the first time. A.B. and Brisco were half-siblings, sharing the same father.

{¶11} Following the funeral, A.B. remained in contact with her father's family. In October of 2021, A.B. was "kicked out" of her aunt's residence in Michigan. After spending a night in a hotel, A.B. contacted Brisco's mother, Donna, looking for a place to stay. A.B. then went to Lima to stay at Donna's residence. At the time, Brisco was also staying in Donna's residence.

{¶12} Donna's house was small so A.B. shared a room with Brisco. A.B. described the sleeping arrangements as "bunk beds," but clarified that she slept on a daybed and Brisco slept on a separate mattress pulled out from underneath the daybed.

{¶13} A.B. testified that on the evening of November 14, 2021, she got into an argument with her boyfriend. A.B. indicated that her boyfriend was supposed to come to Ohio from Michigan and pick her up, but he was having car trouble. A.B. testified that she was really upset so she asked Brisco for advice on how to talk to her boyfriend.

{¶14} A.B. testified that Brisco asked her to sit on his mattress to talk to him. A.B. testified that she had a brief conversation with Brisco, but she was feeling tired and sick due to receiving her second shot of the COVID-19 vaccine that day. A.B. testified that she fell asleep on Brisco's bed.

{¶15} A.B. testified that she was awakened "a few hours later to [Brisco] being inside of [her]." (Tr. at 211). A.B. clarified that Brisco had penetrated her vagina with his penis.

{¶16} A.B. testified that she was on her side and Brisco was behind her, with his arms on her shoulders. She testified that Brisco had pulled her shorts and underwear down a little lower than her hips. She testified that when she "realized what was going on [she] was scared and so [she] froze." (*Id*. at 212). She testified that Brisco ejaculated on her clothing.

{¶17} A.B. testified that "[t]he next thing was he told me to go [to] the bathroom and clean up and [he] told me it was okay because he was my half-brother." (*Id*. at 214). A.B. testified that she went to the bathroom and called the

Suicide Prevention Hotline because she was suicidal after the event. A.B. testified that when she told her story, she was directed to Crime Victim's Services ("CVS").

{¶18} While she was still in the bathroom of Donna's residence, A.B. spoke with a victim's advocate from CVS. A.B. told the advocate what happened. The advocate testified at trial that A.B. was "quiet at first. I would compare it to like maybe not being able to find words, just being at a loss for what to say." (*Id.* at 228). The advocate testified that she used some grounding techniques and eventually A.B. disclosed that she had been sexually assaulted and she did not feel like she was safe in her current location.

{¶19} The advocate suggested that A.B. go to the hospital and A.B. agreed. The advocate sent a cab to the residence and A.B. was taken to St. Rita's hospital in Lima.

{¶20} A nurse practitioner ("NP") conducted a sexual assault examination of A.B. at the hospital. The NP described A.B. as "flat affected," and "withdrawn." (*Id.* at 281). The NP recorded A.B.'s version of events:

> Patient begins story by stating, "Before I went to bed I told him I was upset and needed help with something. He told me he would help me if I got into bed with him. I fell asleep in a twin bed on the lower bunk. When I woke up around 12AM to him being inside of me. I started crying and he told me it was okay because he was my brother. He pulled out and went to the bathroom and told me to lay back on the bed. I laid in bed for the next few hours crying because I did not know what to do. I woke up around 7:30 AM. I locked myself in the bathroom and called Crime Victim Services at 1:30 pm.["]

(State's Ex. 1).

**{¶21}** The NP conducted a physical examination of A.B. and observed that A.B.'s "cervix was red and it also had pooled fluid that was visualized." (Tr. at 265). The NP explained that the cervix could be red for multiple reasons, one of which was direct pressure from intercourse. The NP did not note any bruising on A.B.'s body.

**{¶22}** The NP took DNA swabs of, *inter alia*, A.B.'s vagina and her perineal region. The DNA from A.B.'s perineal region was tested and found to contain a mixture of A.B.'s DNA, and DNA consistent with Brisco's.

**{¶23}** A.B. told the NP that she did not want to speak to law enforcement officers that day. However, A.B. later told the CVS advocate that she wanted to report the matter and she was interviewed by a detective with the Lima Police Department.

**{¶24}** A.B. told the detective what had occurred, though in her narrative to the detective she indicated that Brisco was on top of her rather than beside her. Further, A.B. indicated that Brisco had pulled her shorts and underwear to the side rather than pulling them down. A.B. also told the detective that the encounter lasted for about ten minutes. In addition, A.B. told the detective that as the encounter ended she was yelling at Brisco and "freaking out." (Tr. at 313).

Analysis

{¶25} Brisco argues that there was insufficient evidence presented to convict him of rape in violation of R.C. 2907.02(A)(1)(c). Specifically, Brisco contends that, as a matter of law, sleep is not a mental or physical condition substantially impairing A.B.'s ability to resist or consent to sexual conduct. He also argues that the trial court erred by instructing the jury that sleep constitutes a mental or physical condition that substantially impairs a victim's ability to consent for purposes of R.C. 2907.02(A)(1)(c).

{¶26} In support of his argument that sleep is not a mental or physical condition that substantially impairs a person's ability to consent, Brisco cites *State v. Horn*, 2020-Ohio-960. In *Horn*, the Supreme Court of Ohio determined that a "familial relationship is not a mental or physical condition" that would substantially impair a person's ability to resist or consent pursuant to R.C. 2907.02(A)(1)(c). *Horn* at ¶ 12.

{¶27} Although Brisco relies on *Horn* to support his argument, *Horn* did not address whether sleep constituted a mental or physical condition that substantially impaired a victim's ability to consent to sexual conduct. In fact, Horn had been convicted of one count of rape involving sleep as a mental or physical condition that substantially impaired the victim's ability to consent, and that charge was affirmed on appeal by the Sixth District Court of Appeals in *State v. Horn*, 2018-Ohio-779, ¶ 56-58 (6th Dist.). The Supreme Court of Ohio specifically did not review the

conviction related to sleep as a mental or physical condition, and the Sixth District's holding on that issue was not altered by the Supreme Court of Ohio. Thus while the Supreme Court of Ohio analyzed some issues in *Horn* that are related to mental or physical conditions that substantially impair a victim's ability to resist or consent to sexual conduct pursuant to R.C. 2907.02(A)(1)(c), *Horn* has no bearing on the case *sub judice*.[1]

{¶28} While the Supreme Court of Ohio has not specifically determined whether sleep constitutes a mental or physical condition that substantially impairs a victim's ability to consent to sexual conduct pursuant to R.C. 2907.02(A)(1)(c), this Court has *repeatedly* held that sleep is a mental or physical condition that substantially impairs a victim's ability to resist or consent to sexual conduct in cases decided both before and after *Horn*. *State v. York*, 2022-Ohio-1626, ¶ 80 (3d Dist.); *State v. Stevens*, 2016-Ohio-446, ¶ 13 (3d Dist.); *State v. Wine*, 2012-Ohio-2837, ¶ 50 (3d Dist.). Our prior caselaw is consistent with holdings from other Ohio Appellate Districts as well. *E.G. State v. H.H.*, 2011-Ohio-6660, ¶ 10 (10th Dist.); *State v. Foster*, 2020-Ohio-1379, ¶ 59 (8th Dist.) ("The state is correct that sleep constitutes a condition that substantially impairs a person from consenting to sexual conduct."); *State v. Hines*, 2018-Ohio-1780, ¶ 21 (12th Dist.); *Horn*, 2018-Ohio-779, ¶ 56-58 (6th Dist.).

---

[1] Brisco acknowledges in his brief that he is relying on *dicta* in the Supreme Court of Ohio's *Horn* decision.

**{¶29}** Given that this Court has consistently and repeatedly determined that sleep is a condition that substantially impairs a person from resisting or consenting to sexual conduct, we do not find that the trial court erred by instructing the jury on that issue as the instruction is consistent with the state of the law in this district. *See York*; *Hines* at ¶ 18-20. Moreover, as A.B. testified that she was asleep and awakened to Brisco vaginally penetrating her without her consent, the evidence here supports a conviction under R.C. 2907.02(A)(1)(c).

**{¶30}** Therefore, after reviewing the evidence in a light most favorable to the State, we find that sufficient evidence was presented for a reasonable factfinder to determine beyond a reasonable doubt that Brisco was guilty of rape in violation of R.C. 2907.02(A)(1)(c). We also find that the trial court's instruction regarding sleep was a proper statement of the law in this instance. *Hines* at ¶ 19-21. For all of these reasons, Brisco's first and third assignments of error are overruled.

*Second Assignment of Error*

**{¶31}** In his second assignment of error, Brisco argues that his rape conviction was against the manifest weight of the evidence.

Standard of Review

**{¶32}** In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable

inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

**{¶33}** Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

Evidence Presented by the Defense

**{¶34}** Brisco presented the testimony of Terrence C., who was a friend of Brisco's family. Terrence indicated he had been friends with Brisco's mother and sister for a long time. Terrence testified that on November 14-15, 2021, he was also living with Brisco's mother in Lima along with A.B. and Brisco. Terrence testified that because so many people were staying in the small house, Brisco and A.B. slept in a dining room that had been converted to a bedroom.

{¶35} Terrence testified that on a trip to Detroit he had seen Brisco and A.B. "flirting." (Tr. at 322). He testified that in the cold weather he saw Brisco and A.B. "hugging each other." (*Id*. at 323). Terrence testified that he thought they were a little too close given their familial relationship. Terrence testified that on the specific night in question, he did not hear any yelling and screaming, and he felt he would have awakened if he heard it.

{¶36} Brisco testified on his own behalf, claiming that he had consensual sex with A.B. Brisco testified that A.B. was never sleeping, that she specifically consented to sexual activity, and that she never pushed away from him. He testified that after he ejaculated they both went back to their own beds.

Analysis

{¶37} Brisco contends that his conviction was against the manifest weight of the evidence for multiple reasons. First, he argues that A.B. told inconsistent stories regarding the rape, rendering her story not credible. Second, he argues that the evidence did not support a finding that A.B. was asleep, let alone that Brisco knew that she was asleep.

{¶38} It is true that there were some inconsistencies in the stories that A.B. told. For example, she testified at trial that Brisco penetrated her while she was on her side, whereas she had previously told the detective that Brisco was on top of her. The timing and sequence of events from the end of the rape to A.B. calling the suicide hotline in the bathroom is also murky, as A.B. indicated at one point she

may have fallen asleep crying in bed then she later went to the bathroom, whereas at another point she claimed she went to the bathroom after Brisco told her to clean up.

**{¶39}** Importantly, all the discrepancies were put before the jury for the jury to assess. Even with defense counsel emphasizing the discrepancies to the jury, the jury still found A.B.'s story credible and found Brisco's story not to be credible. We must defer to the factfinder in matters of credibility. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). Moreover, a conviction is not against the manifest weight of the evidence because the jury elected to believe the State's evidence rather than the defendant's version of events. *State v. Green*, 2023-Ohio-4360, ¶ 136 (3d Dist.).

**{¶40}** Here, it is undisputed that a sexual encounter occurred between A.B. and Brisco. Even if it was disputed, A.B.'s testimony and the DNA evidence support a finding of sexual conduct. Moreover, A.B. specifically testified that she was asleep and that she awakened to Brisco penetrating her vagina.

**{¶41}** Based on the testimony and evidence before us, we do not find that the jury clearly lost its way or created a manifest miscarriage of justice. Simply put, this is not one of the exceptional cases that warrants reversal on manifest weight grounds. *See Thompkins*, *supra*. Therefore, Brisco's second assignment of error is overruled.

*Conclusion*

**{¶42}** Having found no error prejudicial to Brisco in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**

**\*\* Judge Craig Baldwin of the Fifth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**