[Cite as *State v. Bey*, 2020-Ohio-4601.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-19-1099

      Appellee                             Trial Court No. CR0201901109

v.

Matheno Bryant Bey                        **DECISION AND JUDGMENT**

      Appellant                            Decided:  September 25, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Emil G. Gravelle III, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Matheno Bryant Bey, appeals the judgment of the Lucas County

Court of Common Pleas, convicting him of one count of gross sexual imposition, and

sentencing him to 17 months in prison.  For the reasons that follow, we reverse.

## I. Facts and Procedural Background

{¶ 2} On January 22, 2019, the Lucas County Grand Jury indicted appellant on one count of gross sexual imposition in violation of R.C. 2907.05(A)(1) and (C), a felony of the fourth degree. The matter was called for arraignment, at which counsel was appointed, and appellant was referred for a competency evaluation. At a subsequent hearing, appellant was found to be competent to stand trial. Although the trial court's judgment entry states that an arraignment was then held, the parties agree that no such arraignment occurred. Nevertheless, the matter proceeded to a two-day jury trial beginning on April 2, 2019.

{¶ 3} At the trial, Sergeant Dale Polowich of the Mercy Health Police Department authenticated surveillance videos taken from Mercy St. Vincent's Hospital on January 11, 2019. The videos show appellant entering the hospital and noticing a female employee, later identified as the victim, A.N. Appellant follows A.N. through the hospital to an elevator. Both appellant and A.N. get on the elevator on the first floor, and the door closes. There are no security cameras located in the elevators. A few seconds later, the surveillance video shows A.N. getting off of the elevator on the second floor, while appellant remains on the elevator. A.N. speaks with a woman near the elevator on the second floor, later identified as L.B., then attempts to make a call on her cell phone.

{¶ 4} The videos then show appellant briefly exiting the elevator on the fourth floor of the hospital before getting back on. Meanwhile, A.N and L.B. attempt to use the elevators on the second floor, and when the doors to one of the two elevators open,

2.

appellant is still in the elevator. A.N. can be seen pointing at appellant, who remains in the elevator. A.N. and L.B. then get into the second elevator. Finally, the videos show appellant exiting the elevator on the first floor and fleeing the hospital.

{¶ 5} Polowich testified that he observed appellant flee the hospital, and pursued him, ultimately apprehending appellant a few minutes later less than a mile from the hospital.

{¶ 6} A.N testified next. In describing what happened on the elevator, A.N. stated,

> I was standing with my side to the back of the elevator and to where the doors open for the elevator. He was standing towards the back of the elevator, so I was perpendicular to him. And I was texting on my phone, because I was currently late for a 1:15 meeting, and as I was standing there, out of the corner of my eye, he came towards me, put his arm – so it would be his left arm, and grabbed my butt and groped me. I then pushed him back and said, are you fucking serious, and at that moment, the door opened, and I walked out.

The following exchange then took place with the prosecutor:

> Q. Did it seem to you like – well, did you have a chance to look at him at that time?
>
> A. Yes. I – once he grabbed my butt, I looked directly at him. He smirked as I pushed him away.

3.

Q. Did it seem intentional?

A. Yes.

Q. Was he forceful?

A. Yes.

Q. And did he react to you at all?

A. He said, I'm sorry.

Q. And how were you feeling when all of this is going on?

A. Violated. Mad. Disturbed. Scared.

{¶ 7} A.N. then specified that the area that appellant groped was her left butt cheek. Finally, A.N. testified that when the elevator doors opened again on the second floor, after the assault and after appellant had been on the fourth floor and was coming back down, A.N. pointed at appellant and told him to stop.

{¶ 8} The last witness to testify for the state was L.B. L.B. testified that as she was waiting for the elevator on the second floor she heard A.N. loudly proclaim "get your hands off of me, I can't believe you just touched me." When the elevator doors opened, L.B. observed A.N. come out of the elevator quickly. According to L.B., A.N. was visibly shaking, her voice was high pitched, and she was clearly upset. A.N. said to L.B., "I can't believe it, but he grabbed my butt." L.B. testified that A.N. also said, "maybe I'm just making a big deal out of it." When the elevator doors opened again, L.B. heard A.N. tell appellant, "stay right there, I just called the police, and they're coming; stay right there."

4.

{¶ 9} Following the state's presentation of evidence, appellant moved for an acquittal pursuant to Crim.R. 29. In support of the motion, counsel for appellant argued that the state had not established that the contact was for a sexual purpose. The trial court recounted the evidence provided by the state and denied appellant's motion.

{¶ 10} Appellant then testified in his own defense. Appellant testified that on January 11, 2019, he was faced with a series of unfavorable outcomes. First, he went to the social security office to inquire on the status of his disability claims and was told that a determination had not yet been reached even though it had been ongoing for three or four years. Next he went to the TASC agency to seek some mental health assistance, and was told that the program only helps people who are currently incarcerated. Finally, he went to the library to try and sign up for some study courses to obtain his GED, but the library was closed.

{¶ 11} Faced with these challenges, appellant had suicidal thoughts, so he went to the hospital. Appellant testified that he was walking around the hospital for approximately one hour, hoping that someone would ask him if he needed help. Eventually, appellant's plan changed, and he set his mind to getting arrested on a misdemeanor charge so that he would be sent to jail where he could get some help. Appellant testified that is the reason that he grabbed A.N.'s buttocks, and that he did not do it for any sexual gratification. On cross-examination, appellant acknowledged that he knew that grabbing another person's buttocks is a form of inappropriate touching.

5.

{¶ 12} After appellant testified and the defense rested, appellant renewed his Crim.R. 29 motion for acquittal, which the trial court again denied. The trial court instructed the jury on the offense of gross sexual imposition, as well as the lesser included offense of sexual imposition, and then the jury retired to deliberate. Ultimately, the jury returned with a verdict of guilty as to the offense of gross sexual imposition.

{¶ 13} On April 16, 2019, the trial court held a sentencing hearing at which it sentenced appellant to 17 months in prison. The trial court further ordered that appellant was to have no contact with A.N. or Mercy St. Vincent Hospital.

## II. Assignments of Error

{¶ 14} Appellant has timely appealed his judgment of conviction, and now asserts five assignments of error for our review:

1. Appellant's conviction for gross sexual imposition was based on insufficient evidence.

2. Appellant's conviction for gross sexual imposition was against the manifest weight of evidence.

3. The trial court erred when it ordered appellant to not have contact with victim or St. Vincent's Hospital.

4. The trial court erred when it failed to give appellant proper notification pursuant to R.C. 2947.23(A).

5. The acts and omissions of trial counsel deprived appellant of his right to effective assistance of counsel in violation of his rights under the

Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 and Section 16 of the Ohio Constitution.

### III. Analysis

{¶ 15} In his first assignment of error, appellant argues that his conviction for gross sexual imposition is based on insufficient evidence. In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 16} Here, appellant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(1), which provides, "No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies: (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."

{¶ 17} On appeal, appellant argues that the state failed to produce sufficient evidence to establish the force element as well as the sexual contact element. Upon review, we hold that the evidence is insufficient to establish that appellant purposely compelled A.N. to submit by force or threat of force.

{¶ 18} R.C. 2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." "Importantly, the plain language of R.C. 2907.05(A)(1) requires a causal connection

7.

between the defendant's use of 'force or threat of force' and the victim's 'submission' to the sexual contact." *State v. Heiney*, 2018-Ohio-3408, 117 N.E.3d 1034, ¶ 102 (6th Dist.). "Accordingly, the essential issue is whether the perpetrator's exertion of *any* amount of 'force or threat of force' was sufficient to overcome the will of the victim." (Emphasis sic.) *Id.*, citing *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 49; *State v. Eskridge*, 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304 (1988) (in context of rape statute, the forcible element can be established where the "victim's will was overcome by fear or duress").

{¶ 19} In this case, the evidence at trial reveals that appellant, without warning, reached out and grabbed A.N.'s left buttock. A.N. immediately objected and pushed appellant away. Appellant apologized, and the victim left the elevator without any further incident.

{¶ 20} We find this case to be analogous to *Wine, supra*. In that case, while the victim was asleep the defendant touched her breast and attempted to digitally penetrate her vagina. *Wine* at ¶ 10. As soon as the victim awoke, the defendant withdrew his hands from her body, ending the sexual contact. *Id.* On appeal, the Third District held that the defendant's conviction for gross sexual imposition was based upon insufficient evidence because "no sexual contact occurred after [the victim] was awake and aware of the sexual contact. [The victim's] will was not overcome by force or threat of force, nor did [the victim] 'submit' to the sexual contact by force or threat of force." *Id.* at ¶ 47. Further, the court held that while the victim was in a state of fear after the defendant had

8.

sexually contacted her, the victim's fear and distress "did not *cause* her to submit to the initial sexual contact or any further contact." (Emphasis sic.) *Id.*

{¶ 21} We also find this case to be analogous to *State v. Riggs*, 10th Dist. Franklin Nos. 04AP-1279, 04AP-1280, 2005-Ohio-5244, as it pertains to the element of force. In that case, the victim testified that the defendant—her legal custodian—had engaged in a pattern of sexual conduct with her leading to the defendant's conviction on five counts of gross sexual imposition. On appeal, the defendant challenged the sufficiency of the evidence as it pertained to one count that he argued was based upon his conduct at a 1999 Christmas party. The victim testified that during the party she found herself alone with the defendant downstairs. *Id.* at ¶ 14. The defendant then reached out and touched the victim's breast on top of her shirt, after which the victim "said, 'no,' and just went upstairs." *Id.* On appeal, the 10th District concluded that there was no evidence of physical force or compulsion, reasoning,

> [The defendant] did not tell or command [the victim] to do anything and did not threaten or restrain [the victim.] [The defendant] did not engage in any contact other than the sexual contact necessary for the offense itself. [The defendant] did not remove or displace [the victim's] clothing and did not hold or reposition [the victim's] body. Rather, according to [the victim's] testimony, [the defendant] and [the victim] simply found

9.

themselves alone together in the basement, and [the defendant] reached out and touched [the victim's] breast over her shirt.

*Id.* at ¶ 24.[1]

{¶ 22} In the same way, here, at no point was A.N.'s will overcome by force or threat of force, and at no point did A.N. submit to the sexual contact by force or threat of force. Likewise, although A.N. was rightfully disturbed, scared, and upset after appellant grabbed her buttocks, her fear and distress did not cause her to submit to the initial sexual contact or any further contact.

{¶ 23} In opposition, the state argues that the force element was satisfied because appellant waited to perform the act until he was alone with A.N. in the confined space of the elevator, where A.N. was unable to escape until the doors opened. In support, the state cites two cases, both of which we find distinguishable.

{¶ 24} In the first case, *State v. Thomas*, 8th Dist. Cuyahoga No. 56652, 1990 WL 28831 (Mar. 15, 1990), the defendant drove the victim to a park in the early morning hours, and asked if he could kiss her. Although the victim did not know the defendant, she agreed to a consensual kiss. After the kiss, the defendant put his hands inside the victim's blouse and touched her breasts. *Id.* at *3. The victim asked the defendant not to touch her there, but he did it again. *Id.* In holding that the victim was compelled to submit to the touching by force or threat of force, the Eighth District relied

---

[1] The Tenth District ultimately upheld the defendant's conviction based upon other conduct that occurred during the year. *Riggs* at ¶ 28-29.

on the fact that the two were in the confined space of the defendant's car, in the early morning hours. *Id.* at *4.

{¶ 25} In the second case, *State v. Staab*, 9th Dist. Lorain No. 04CA008612, 2005-Ohio-3323, ¶ 9, the victim was in a bathroom stall when the defendant approached from behind, pressed his body up against the victim, and reached around the victim's body to fondle the victim's penis and testicles. The Ninth District held that based upon the configuration of the bathroom stall, the defendant blocked the entire stall exit, and thus constrained the victim by blocking the victim's only means of escape. *Id.*

{¶ 26} Unlike the present case, in both *Thomas* and *Staab*, there was at least some evidence that the victim's will was overcome by force or the threat of force apart from the initial sexual contact. *Thomas* is distinguishable because in that case, there was a second instance of sexual contact after the victim told the defendant not to touch her breasts. Thus, in *Thomas*, the defendant's persistence in engaging in sexual contact while in a remote location in the confined space of a car supported the conclusion that the victim's will was overcome by the threat of force. Here, however, there was no second sexual contact.

{¶ 27} Similarly, *Staab* is distinguishable because in that case the defendant pressed his body against the victim, blocking the victim's escape. Thus, the evidence supported the conclusion that the defendant overcame the will of the victim through the use of force. Here, in contrast, there was no physical contact apart from appellant

11.

grabbing A.N.'s buttocks; appellant did not press his body against A.N. or pin her against the elevator wall.

{¶ 28} Therefore, we hold that even when viewing the evidence in a light most favorable to the prosecution, the evidence was insufficient as a matter of law to support the jury's finding that appellant compelled the victim to submit by force or threat of force.

{¶ 29} Accordingly, appellant's first assignment of error is well-taken.

{¶ 30} Because we hold that appellant's conviction for gross sexual imposition is based upon insufficient evidence, appellant's remaining assignments of error are moot.

### IV.  Conclusion

{¶ 31} For the foregoing reasons, we find that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas convicting appellant of gross sexual imposition is reversed and vacated, and the case is ordered to be dismissed.  The state is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and vacated.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
JUDGE

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.