[Cite as *Toledo v. Bryant-Bey*, 2023-Ohio-4798.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo                    Court of Appeals No.  L-23-1048

     Appellee                                          Trial Court No.  CRB-22-11978

v.

Matheno Bryant-Bey                              **DECISION AND JUDGMENT**

     Appellant                                         Decided:  December 28, 2023

* * * * *

Rebecca Facey, City of Toledo Prosecuting Attorney, and
Jimmie Jones, Assistant Prosecuting Attorney, for appellee.

Tyler Naud Jechura, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a jury trial, defendant-appellant, Matheno Bryant-Bey, appeals

the February 28, 2023 judgment of the Toledo Municipal Court, convicting him of sexual

imposition.  For the following reasons, we affirm the trial court judgment.

## I. Background

{¶ 2} Matheno Bryant-Bey was charged with two counts of sexual imposition, violations of R.C. 2907.06(A)(1), third-degree misdemeanors. Following a jury trial, Bryant-Bey was found not guilty of the first count and guilty of the second count. The trial court sentenced him to 60 days in jail and he was deemed a Tier 1 sex offender.

{¶ 3} According to the evidence presented at trial, as to the first count, on November 29, 2022, Bryant-Bey approached S.M., a children's librarian at the Toledo-Lucas County Library, and asked for help finding a holiday book. He followed S.M. to the corner of the library where those books were shelved. While S.M. was bending down searching the bookshelf for books, she could not see Bryant-Bey, but she sensed that he was behind her. He smelled of alcohol. She then felt something press against her buttocks. S.M. was confident that it was Bryant-Bey's erect penis, but she admitted that she did not actually see an erect penis, so she could not be certain.

{¶ 4} As to the second count, on December 30, 2022, 19-year-old J.B. was shopping with her mother at The Buckle at the mall. Bryant-Bey walked behind her and stepped on her heel, bumping J.B. into her mother. As this happened, Bryant-Bey cupped J.B.'s buttocks with his hand, moved his hand onto her back, and cupped her buttocks again. Bryant-Bey mumbled "sorry," and J.B. instinctively said, "that's okay." J.B.'s mother had seen Bryant-Bey earlier in their shopping trip and had noticed that he smelled of alcohol.

2.

**{¶ 5}** Both S.M. and J.B. testified, as did J.B.'s mother and the police officers who took S.M. and J.B.'s reports. Significantly, both J.B. and her mother said that J.B. reported the incident directly to the officer, but the officer testified that he initially obtained the relevant information from J.B.'s mother while J.B. stood next to her and nodded. He testified that once he learned that J.B. was not a juvenile, he asked her directly for information, but by then, all he needed was her name, address, and phone number. He had already received all other pertinent information from J.B.'s mother.

**{¶ 6}** In addition to these witnesses, the city presented testimony from A.N. Bryant-Bey had been convicted of gross sexual imposition under R.C. 2907.05(A)(1) (sexual contact compelled by force or threat of force) for groping A.N.'s buttocks in 2019 in an elevator at St. Vincent Hospital, where she worked. We reversed Bryant-Bey's conviction, holding that the state had not presented sufficient evidence to support the element of force. *State v. Bey*, 6th Dist. Lucas No. L-19-1099, 2020-Ohio-4601, ¶ 28. Before trial, Bryant-Bey moved in limine to prevent the city from offering evidence of "previous acts or other pending cases," including evidence of this 2019 incident. Nevertheless, the city expressed its intent to offer evidence of the incident at trial to show a common plan or scheme or lack of mistake or inadvertence. In a written judgment filed February 14, 2023, the trial court concluded that the city could present evidence of the incident, but it held that "[n]o mention of a conviction or appeal may be made."

{¶ 7} On the day of trial, defense counsel told the court on the record that if it was going to allow evidence of the 2019 incident to be presented to the jury, he wanted the jury to know that Bryant-Bey had been convicted in connection with this incident, but that the conviction was reversed and vacated on appeal. He explained: "Our position is that it's all or nothing."

{¶ 8} The court accommodated defense counsel's request and told the jury of the conviction and the reversal of the conviction. It also instructed the jury before the parties presented opening statements—and, again, before allowing A.N. to testify—that it could consider A.N.'s testimony as evidence of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident," but not to "reach the conclusion that * * * he did it once before, he probably did it this time too." It reiterated this admonition in its general jury instructions.

{¶ 9} The jury found Bryant-Bey not guilty of the sexual imposition of S.M., but guilty of the sexual imposition of J.B. Bryant-Bey appealed. He assigns the following errors for our review:

> THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ALLOWED A WITNESS TO TESTIFY ABOUT EVENTS FOR WHICH THE DEFENDANT WAS CONVICTED, BUT THEN HAD THAT CONVICTION REVERSED AND VACATED.

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT
CONVICTED THE DEFENDANT BECAUSE THAT CONVICTION
WAS CLEARLY AGAINST THE MANIFEST WEIGHT OF THE
EVIDENCE.

## II.     Law and Analysis

{¶ 10} In his first assignment of error, Bryant-Bey argues that the trial court erred in admitting other-acts evidence, and in his second assignment of error, he argues that his conviction was against the manifest weight of the evidence.  We consider each of his assignments in turn.

### A. Evid.R. 404(B)

{¶ 11} In his first assignment of error, Bryant-Bey argues that the trial court erred when it allowed A.N. to testify about the 2019 incident at St. Vincent Hospital.  He claims that evidence of the incident should not have been admitted because (1) he never testified or claimed that he touched the victims in the present case by mistake or inadvertence, therefore, A.N.'s testimony was not relevant and was highly prejudicial, and (2) his conviction was reversed on appeal.

{¶ 12} The city responds that the trial court performed the proper analysis before allowing A.N. to testify.  It also maintains that the reversal of Bryant-Bey's conviction in the 2019 case did not render A.N.'s testimony inadmissible.

5.

{¶ 13} Before trial, Bryant-Bey moved in limine to exclude other-acts evidence. The city responded that evidence of other acts, including the other-act evidence at issue here, was admissible to show the absence of mistake and common plan or scheme. The trial court issued a written judgment employing a three-part test for determining the admissibility of the evidence: (1) whether the evidence was relevant, (2) whether it was offered for a purpose other than to prove propensity, and (3) whether the probative value of the evidence was substantially outweighed by the risk of unfair prejudice. The court concluded that the evidence was relevant to show that Bryant-Bey had developed a plan or scheme to seek out women in public places and touch their buttocks, and, if believed by the jury, would show the absence of mistake or inadvertence. The court concluded that jury instructions would minimize the risk of confusion or unfair prejudice.

{¶ 14} Under Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." That evidence may be admissible for other, limited purposes, however, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22.

{¶ 15} Additionally, under R.C. 2945.59, "[i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the

defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

{¶ 16} To determine whether evidence of other acts is admissible, the first step is determining whether the evidence is relevant in two respects: (1) to the particular purpose for which it is offered—i.e., a non-character-based purpose, as allowed by Evid.R. 404(B)—and (2) to an issue that is actually in dispute—i.e., an issue that is material to the case, as required by Evid.R. 401. *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123, ¶ 37-38, citing *Hartman* at ¶ 26-27; *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. Additionally, a threshold showing of "'substantial proof'" that the defendant is the person who committed the alleged other acts is required as part of the court's relevancy determination. *Hartman* at ¶ 28, quoting *State v. Carter*, 26 Ohio St.2d 79, 83, 269 N.E.2d 115 (1971).

{¶ 17} If the evidence passes the relevancy test, the final step to determining its admissibility is considering, under Evid.R. 403(A), whether the value of the evidence "is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *Smith* at ¶ 38, citing *Hartman* at ¶ 29; *Williams* at ¶ 20.

7.

**{¶ 18}** The admissibility of other-acts evidence under Evid.R. 404(B) is a question of law that we review de novo. *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶ 117, citing *Hartman* at ¶ 22. But the trial court's weighing of the probative value of admissible evidence against the danger of unfair prejudice to the defendant under Evid.R. 403(A) involves an exercise of judgment, so we review that decision for an abuse of discretion. *Id.*, citing *Hartman* at ¶ 30.

**{¶ 19}** Bryant-Bey moved in limine to exclude the other-acts evidence, however, he did not renew his objection on the record at trial when A.N. testified. Generally speaking, "the grant or denial of a motion in limine is not a definitive ruling on the evidence" therefore, "the grant of a motion in limine generally does not preserve any error for appellate review." *Setters v. Durrani*, 2020-Ohio-6859, 164 N.E.3d 1159, ¶ 12 (1st Dist.), citing *State v. Grubb*, 28 Ohio St.3d 199, 200-202, 503 N.E.2d 142 (1986). Evid.R. 103 was revised effective July 1, 2017, however, and now provides that "[o]nce the court rules definitely on the record, either before or at trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Evid.R. 103(A)(2). Here, when the trial court ruled on Bryant-Bey's motion, it made clear that its ruling was tentative and could be reconsidered in context at trial. As such, the trial court judgment cannot be viewed as definitive for purposes of Evid.R. 103(A)(2), therefore, we are limited to a plain-error review of Bryant-Bey's assignment of error.

8.

**{¶ 20}** Plain error is error that affects substantial rights. Crim.R. 52(B). In determining whether plain error occurred, we must examine the alleged error in light of all of the evidence properly admitted at trial. *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.,* citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *Id.,* citing *Long* at paragraph two of the syllabus.

**{¶ 21}** Under R.C. 2907.06(A)(1), "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender knows that the sexual contact is offensive to the other person * * * or is reckless in that regard." By its terms, "the culpable mental state for a violation of R.C. 2907.06(A)(1) is either knowledge or recklessness," therefore, "[t]o obtain a conviction for sexual imposition in violation of R.C. 2907.06(A)(1), the State must prove either that the defendant knew that the sexual contact was offensive or that the defendant was reckless with respect to whether the sexual contact was offensive." *State v. Wrasman*, 3d Dist. Auglaize No. 2-20-03, 2020-Ohio-6887, ¶ 9. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and

9.

unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶ 22} In *State v. Hines*, 2018-Ohio-1780, 112 N.E.3d 10 (12th Dist. ), the defendant was on trial for rape. The victim testified that after a night out drinking with the defendant and others, she awoke to a sharp pain inside her vagina. She found that her dress had been pulled up and her tights had been pulled down, and she realized that the defendant was lying behind her with his fingers inside her vagina. At trial, the court allowed evidence of a similar incident involving another woman who testified that after a night out drinking, she awoke to the defendant rubbing her vagina over her clothing.

{¶ 23} On appeal, the defendant challenged the admission of this other-acts evidence. He argued that his motive, intent, knowledge, or absence of mistake or accident were not at issue in the case; rather, the only issue was whether he had digitally penetrated the victim. The Twelfth District rejected his argument. It concluded that the evidence was properly admitted because it was relevant to establish defendant's motive, intent, knowledge, or absence of mistake or accident, and specifically the defendant's "scheme, plan, or system in doing the act in question." *Id.* at ¶ 56. The court observed that the trial court minimized the risk of prejudice by specifically instructing the jury both before the woman's testimony and during final jury instructions that it could not consider the testimony to prove character or to prove that defendant acted in conformity with such character and that it should consider the evidence only for the purposes stated above. It

10.

recognized that a jury is presumed to have followed the instructions given to it by the trial court and found that the record did not reflect any indication that the jury did not follow the trial court's instructions.

{¶ 24} Here, the trial court found that A.N.'s testimony about the 2019 incident was relevant because it showed that Bryant-Bey had a plan or scheme for seeking out women in public places and touching their buttocks and that he did not accidentally or inadvertently touch J.B.'s buttocks. It is true, as Bryant-Bey points out, that he did not testify and, therefore, did not specifically claim that he accidentally or inadvertently touched J.B.'s buttocks. However, J.B. testified that Bryant-Bey apologized right after stepping on her heel and cupping her buttocks. As recognized by the trial court, A.N.'s testimony was relevant because it showed that despite his apology, Bryant-Bey did not mistakenly bump into J.B. at the mall; his conduct was planned. In other words, A.N.'s testimony showed that it was more likely that Bryant-Bey acted knowingly or recklessly—rather than accidentally or inadvertently—when he touched J.B.'s buttocks. We conclude, therefore, that the other-acts evidence was relevant and the trial court did not commit error—let alone plain error—in admitting it.

{¶ 25} Turning to Bryant-Bey's claim of unfair prejudice, like the trial court in *Hines,* the trial court here provided instructions that minimized the risk of prejudice. Before opening statements, before A.N. testified, and then again in its general jury instructions, the court instructed the jury of the purposes for which it could consider the

11.

other-acts evidence and emphasized that it could not consider the evidence for propensity purposes. The court gave the following instruction before opening statements.

The State will be presenting evidence from several witnesses. Three of the witnesses are complaining witnesses. You must be careful how you evaluate this testimony. It is very important you treat * * * the two charges separately. You may not make the inference that if the defendant did it once he would likely do it again. Nor may you conclude that if three witnesses testify to similar acts, he is more likely to have committed such act. Only if you are convinced, beyond a reasonable doubt, of each and every element of an offense or offenses may you find the defendant guilty of that offense or offenses. In other words, it may not be used to establish that the defendant has a propensity for inappropriate touching. However, the State may ask you to consider the testimony of the three * * * complaining witnesses to demonstrate that the defendant had a plan, motive, or lack of mistake. I understand this may be a difficult concept. The Court shall provide an example to assist your understanding. Let's assume that this were a jury trial for a bank robbery. Let's also assume that the State had evidence that the defendant had previously committed another bank robbery. With just these facts, the State would not be permitted to introduce evidence of the prior bank robbery. That is because each case

12.

must stand on it's [sic] own. A jury would not be able to hear evidence of the other robberies because it is too likely that jurors would reach the conclusion that the accused had committed another bank robbery, so he probably did this one too. That is inadmissible propensity evidence. However, let's tweak the facts. Let's add that, in the present and prior bank robberies, the defendant had previously * * * been observed in the bank taking pictures and taking notes. In this scenario, the State would be permitted to provide evidence of the other bank robberies to show his plan. It may also be considered to rebut a claim, from the accused, that he just happened to be in the bank the day before the bank robbery. In short, you must be * * * very careful not to reach the conclusion that the defendant * * * did it before so he probably did it again. You are not permitted to consider the other acts evidence for this purpose. Finally, like all other witnesses, in this trial, you are the sole judges of their credibility. You are charged with determining the true nature [of] other * * * contact if any. * * * While the State may present these other witnesses, you may conclude that there was nothing inappropriate in the interactions between defendant and the witnesses, and that they do not support the State's position that they are evidence of planning, motive, or mistake.

13.

The court then gave the following instruction after the evidence was presented, but before submitting the case to the jury:

It is permissible for you to consider the testimony of all witnesses for [sic] as it relates to the State's theory the defendant's actions demonstrate his plan, motive, or lack of mistake. But you may not find the defendant guilty of any or all of the offenses unless you are able to conclude that each of the elements have been proven, beyond a reasonable doubt, as to each charge or charges. The City has introduced evidence of an alleged act from 2019. The testimony was introduced because the City believes that it demonstrates the defendant had a plan or scheme and/or negates an argument that whatever touching, if any, was a mistake or inadvertent. It is permissible for you to consider this testimony for that purpose. It is impermissible for you to conclude that if you believe the alleged 2019 incident took place that because of that incident, that the defendant has the proclivity or propensity to commit such acts and therefore should be found guilty of the present charges. Similarly, you may find—you may conclude that the November 29th incident supports the City's argument that the December 30th incident was not the result of inadvertence or mistake, and may have been part of a plan or scheme. Similarly, you may find—conclude that December 30th incident

demonstrates lack of mistake or inadvertence or a plan or a scheme. But you cannot reach the conclusion that because the defendant did it once before, so he probably did it again. Each of the two charges must stand on their own.

"[W]hen a court issues a limiting instruction with respect to other-acts evidence, the instruction should be tailored to the facts of the case." *Hartman,* 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, at ¶70. The trial court here issued a specifically-tailored instruction explaining the limited purposes for which the jury could consider the other-acts evidence here. As such, any risk of unfair prejudice was effectively minimized.

{¶ 26} As for the fact that Bryant-Bey's conviction was overturned in *Bey*, 6th Dist. Lucas No. L-19-1099, 2020-Ohio-4601, the state argues that the reversal of his conviction did not preclude it from offering evidence of the conduct for a purpose permitted under Evid.R. 404(B). We agree.

{¶ 27} The text of Evid.R. 404(B) does not limit the admission of other-acts evidence to conduct resulting in a conviction. Rather, the Ohio Supreme Court has articulated that for evidence to be admissible under Evid.R. 404(B), there must be "substantial proof that the alleged other acts were committed by the defendant." *State v. Lowe,* 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (1994). "'Substantial proof' is not proof 'beyond a reasonable doubt.'" *Hines* at ¶ 53, quoting *State v. Jones*, 12th Dist. Butler

15.

No. CA2012-03-049, 2013-Ohio-150, ¶ 37. Moreover, in *State v. Smith,* 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123, the Ohio Supreme Court concluded that the trial court properly allowed the admission of other-acts evidence even though the defendant had been tried and acquitted of a crime in connection with the conduct underlying the other-acts evidence.

{¶ 28} In *Bey*, we reversed Bryant-Bey's conviction because the state failed to prove the element of force. His identity as the perpetrator of the offense was not at issue—there was surveillance video demonstrating that he followed A.N. into the elevator. Under the circumstances of this case, there was substantial proof that Bryant-Bey committed the other act even though his conviction was ultimately vacated. The evidence was, therefore, admissible despite the reversal of his gross-sexual-imposition conviction. The trial court did not err in admitting the other-acts evidence.

{¶ 29} We find Bryant-Bey's first assignment of error not well-taken.

### B. Manifest Weight of the Evidence

{¶ 30} In his second assignment of error, Bryant-Bey argues that his conviction is against the manifest weight of the evidence. He argues that the officer's report of the incident involving J.B. was unreliable because J.B.'s mother made the report—not J.B.—even though J.B. was 19 years old. He emphasizes that the officer only saw J.B. shake her head affirmatively while her mother did the talking, and he never separated J.B. from her mother to get a report directly from J.B.

16.

{¶ 31} The state responds that the jury heard testimony from both J.B. and her mother, and J.B. clearly testified that Bryant-Bey bumped her, placed his hand on her buttocks, put his hand on her lower back, then placed it on her buttocks again. It points out that J.B.'s mother saw Bryant-Bey follow them into two stores.

{¶ 32} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 33} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and

17.

discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 34} Here, J.B. testified that Bryant-Bey placed his hand on her buttocks, put his hand on her lower back, then placed it on her buttocks again. Regardless of whether she did the talking when the incident was reported to the officer, this was her testimony at trial. The jury obviously found her testimony credible. We defer to the jury's credibility determinations, and we decline to conclude that Bryant-Bey's conviction was against the manifest weight of the evidence merely because the jury believed the city's version of events over the defendant's version. *See State v. Haugh*, 6th Dist. Lucas No. L-15-1115, 2016-Ohio-8008, ¶ 48.

{¶ 35} We find Bryant-Bey's second assignment of error not well-taken.

### III.    Conclusion

{¶ 36} The trial court admitted other-acts evidence for proper purposes here. Although we reversed Bryant-Bey's conviction relating to the conduct underlying the other-acts evidence, we did so because we concluded that the state failed to prove an aggravating element—not because of any doubt concerning Bryant-Bey's identity as the perpetrator of the act. We find his first assignment of error not well-taken.

{¶ 37} The victim testified that Bryant-Bey knowingly or recklessly touched her buttocks, and the jury believed her testimony. We defer to its credibility determinations here, regardless of whether it was J.B. or her mother who initially reported the incident to

18.

the responding officer. Bryant-Bey's conviction was not against the manifest weight of the evidence. We find his second assignment of error not well-taken.

{¶ 38} We affirm the February 28, 2023 judgment of the Toledo Municipal Court. Bryant-Bey is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                    _____
                                                          JUDGE
Gene A. Zmuda, J.

Charles E. Sulek, J.                     _____
CONCUR.                                                JUDGE

                                         _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.