[Cite as *State v. Gibson*, 2025-Ohio-5073.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

       Appellee

v.

Zachary James Gibson

       Appellant

Court of Appeals No.   {87}WD-24-049
                       {87}WD-24-050

Trial Court No.   2022 CR 0241
                  2023 CR 0181

**DECISION AND JUDGMENT**

Decided: November 7, 2025

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney,
for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} In this consolidated appeal, appellant Zachary Gibson appeals the judgments of the Wood County Court of Common Pleas, which convicted him, following a jury trial, of numerous sexual offenses involving minors. For the reasons that follow, the trial court's judgments are affirmed.

## I. Factual Background and Procedural History

{¶ 2} On June 16, 2022, the Wood County Grand Jury returned a five-count indictment in case No. 2022-CR-0241 charging Gibson with two counts of sexual battery in violation of R.C. 2907.03(A)(9) and (B), felonies of the third degree; two counts of illegal use of a minor or impaired person in nudity-oriented material in violation of R.C. 2907.323(A)(3) and (B), felonies of the fifth degree; and one count of attempted illegal use of a minor or impaired person in nudity-oriented material in violation of R.C. 2923.02 and R.C. 2907.323(A)(3) and (B), a misdemeanor of the first degree. Prior to trial, the State dismissed the count of attempted illegal use of a minor in nudity-oriented material.

{¶ 3} The remaining four charges were based on allegations related to a 16-year-old victim, R.R. Specifically, that on two occasions in February 2022, Gibson requested, possessed, and viewed Snapchat images of R.R.'s penis, and that on or about March 27 and April 3, 2022, Gibson performed oral sex on R.R.

{¶ 4} On April 13, 2023, the Wood County Grand Jury returned a separate 17-count indictment in case No. 2023-CR-0181 charging Gibson with three counts of rape in violation of R.C. 2907.02(A)(1)(c) and (B), felonies of the first degree; three counts of gross sexual imposition in violation of R.C. 2907.05(A)(5) and (C)(1), felonies of the fourth degree; six counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(1) and (C), felonies of the second degree; one count of disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(1) and (F), a

2.

felony of the fifth degree; two counts of failure to comply with underage alcohol laws in violation of R.C. 4301.69(A) and 4301.99(I), unclassified misdemeanors; one count of importuning in violation of R.C. 2907.07(B)(1) and (G)(3), a felony of the fifth degree; and one count of illegal administration or distribution of anabolic steroids in violation of R.C. 2925.06(A) and (C), a felony of the fourth degree. Prior to trial, the State dismissed the count of illegal administration or distribution of anabolic steroids. Further, the jury acquitted Gibson on the count of importuning, and the evidence pertaining to that charge will not be discussed in this appeal.

{¶ 5} The remaining charges related to allegations that on or about July 2, 2021, Gibson provided alcohol to the 15-year-old victim, B.F., then took six videos of himself anally raping and performing other sexual acts with B.F. while B.F. was unconscious. In addition, the State alleged that on or about March 27, 2022, Gibson again provided B.F. with alcohol and then showed him pictures of R.R.'s penis.

{¶ 6} The trial court consolidated the two cases, and the matter proceeded to a four-day jury trial.

{¶ 7} Zachary Lewis was the first witness to testify. He was the owner of Fast Track Performance, a sports performance company and gym in Perrysburg, Ohio. Gibson worked for Fast Track Performance as an independent contracted trainer from the fall of 2020 until April 2022. Lewis estimated that Gibson worked with over 50 student athletes during that time. In April 2022, when the first allegation was made that Gibson had sent an inappropriate message to an athlete, Lewis told Gibson not to come back to

3.

the facility. He also sent out a letter regarding the situation to the parents of the athletes with whom Gibson had worked.

{¶ 8} Mason Roth, the head varsity basketball coach for Bowling Green City Schools, testified that Gibson was contracted through Fast Track Performance to be the strength and conditioning coach for the basketball program from June 2021 until April 2022. In that role, Gibson was in charge of the weight room and was responsible for the lifting and conditioning programs of the athletes. Roth considered Gibson to be a coach, held him out to the players as a coach, and referred to him as Coach Gibson. He acknowledged on cross-examination that Gibson was not a basketball coach and had no role in the "day-to-day" basketball decisions, but he clarified that Gibson had complete control over the "day-to-day" activity of the strength and conditioning program. Roth further testified that R.R. was a player on the basketball team and was one of the athletes who Gibson supervised.

{¶ 9} Ro.R., the father of R.R., testified that R.R. developed a relationship with Gibson, and when R.R. went through a break-up with his girlfriend, R.R. felt that Gibson was someone that he could talk to and who would listen to him. Ro.R. stated that R.R. went to Gibson's house on three occasions in 2022: February 19, March 25, and April 3. He explained that he was able to identify those dates from the monitoring software that he had installed on R.R.'s cellphone. He became concerned when one of the monitoring applications alerted him that sexual messages were being sent or received through R.R.'s

4.

phone. Some of the messages contained sexual jokes and innuendo that Ro.R. thought was inappropriate for a coach, and others were "flat out" sexual.

{¶ 10} When Ro.R. received the letter from Fast Track Performance, he immediately called R.R.'s school and had them take R.R.'s phone. He then went with R.R. and the cellphone to the police. The next day, R.R. received Snapchat messages from Gibson that Ro.R. photographed. In those messages, Gibson apologized for getting R.R. involved and asked what R.R. told "them." R.R. replied, "That we just hung out a couple times." Gibson responded in two separate messages, "Ok. [I don't know] how bad this is for me but I'm scared bub," and "That's all?" Gibson ended the conversation with "Love you buddy. Promise I'm not mad at you for what ever happens."

{¶ 11} R.R. testified that he first met Gibson during his sophomore year basketball season. Gibson was a "trainer, slash, coach" who R.R. described as "a cool guy," or "one of the guys." Gibson would "hang out" with the athletes and joke around with them.

{¶ 12} R.R. then testified to the three times that he went over to Gibson's apartment in Bowling Green, Wood County, Ohio.

{¶ 13} Regarding the first time, R.R. stated that he did not remember any details other than he was there alone with Gibson and nothing uncomfortable or bad happened.

{¶ 14} On or around March 27, 2022, R.R. went to Gibson's apartment for a second time. On that occasion, B.F. was present. R.R. and B.F. went to different schools but knew each other from playing junior football. R.R. testified that they were watching March Madness basketball, and Gibson gave them alcohol that night. He described that

5.

he did not want the alcohol, but Gibson said it would be "a seal of our friendship" if he drank it with him. R.R. then testified that as he was getting ready to leave, Gibson led him into his bedroom, tossed him onto the bed, and pulled down his pants. Gibson then put R.R.'s penis in his mouth. R.R. described that although it felt longer, it probably only lasted a few seconds. He did not want or ask Gibson to do the act, but he felt frozen and did not know what to do. He remembered that B.F. came into the room, "like, running in, like wasn't really sure what was happening, and that's when it had stopped." He did not know, however, if B.F. knew what was happening or if he saw anything. R.R. testified that he did not tell anyone about the event because he was embarrassed and initially thought that it might have been his fault, and he was worried about what would happen to his future and whether he would get into trouble for drinking.

{¶ 15} As to the third time, R.R. testified that he went back to Gibson's apartment about a week after the first incident. He explained that he did not want to go over, but he understood that Gibson's friend D. would be there, which made him feel more comfortable that nothing else would happen. When he arrived, no one else was present. He and Gibson got food and started watching a movie on the couch. He testified that during the movie, Gibson's feet would "wander" to R.R.'s crotch, causing R.R. to move away and flip over. After the movie, when R.R. was getting ready to leave, Gibson pulled him over to the couch where he was sitting, pulled down R.R.'s pants, and put his penis in his mouth again. R.R. stated that it only lasted a few seconds, and he made it

stop by repeating that he had to go home. R.R. testified that he did not want that to happen, and he felt betrayed.

{¶ 16} R.R. also testified that in between visits to Gibson's apartment, Gibson would contact him, asking him to come over. R.R. did not want to go and used the excuse that his parents would not let him. According to R.R., Gibson responded that R.R. should leave his phone at a restaurant so that his parents would not know where he was.

{¶ 17} R.R. additionally testified to sending Gibson pictures of his penis through Snapchat. He explained that he could not completely remember but believed that he sent the pictures before the sexual assaults occurred. He also could not remember if he sent Gibson pictures more than once, but he thought that it was two or more times. R.R. further recounted a time that he sent a video to Gibson of him achieving a personal record for squatting a weight, to which Gibson replied, "Have you ever thought about doing it naked?"

{¶ 18} Finally, R.R. testified to Snapchats that he received from Gibson after the allegations began to come out. Gibson was distraught and was alluding to suicide. He messaged that he needed to hug R.R. "one time." R.R. responded to the messages by saying, "Thanks bro I rly . . . appreciate it. I love u bro and I'll never forget u. I hope u can get through this and I'll be there for u as much as possible." He explained to the jury that he sent the response because Gibson had mentioned killing himself and Gibson had said other things that made him feel bad for him and made him feel like he did something

7.

wrong and that it was all his fault. R.R. has learned over time that he was not at fault for what happened.

{¶ 19} On cross-examination, R.R. was asked about his two interviews with the police, one occurring in April 2022 and the other occurring in January 2023. In April 2022, R.R. told the police that on the night of the first event, March 27, 2022, he and B.F. were getting ready to leave the apartment at the same time. Yet, in January 2023 he told the police that B.F. left right behind him, but he was not sure how B.F. left. R.R. testified at the trial, however, that he was not positive that B.F. left right behind him.

{¶ 20} Further, R.R. told the police in April 2022 that Gibson nudged him or pulled him into the bedroom where he pulled down R.R.'s pants and put his penis in his mouth for one to two seconds. In January 2023, R.R. elaborated on his story and said that Gibson told him, "[L]et me do something real quick." R.R. also told the police in January 2023 that Gibson placed his hand on the middle of R.R.'s back and guided him into the bedroom. He also described in January 2023 that Gibson had his penis in his mouth for approximately five to six seconds.

{¶ 21} Finally, R.R. told the police in April 2022 that B.F. was in the bathroom when this happened, but in January 2023 he told the police that B.F. was somewhere, and he did not know where B.F. was.

{¶ 22} The State next called Wood County Sheriff's Detective Ryan Richards. Richards performed the forensic mobile extraction on Gibson's cellphone, which he authenticated at the trial. On cross-examination, Richards admitted that at the time he

8.

analyzed Gibson's phone an update was available for the extraction software, which he had not downloaded and installed, so he was using an earlier version. He clarified, however, that the software update did not invalidate or make the extraction inaccurate. He further testified that he may have made a supplemental police report detailing his steps in performing the extraction, but that information was contained in the extraction report itself.

{¶ 23} The trial then turned towards the allegations involving B.F. B.F.'s mother, T.F., testified that B.F. spent the night at Gibson's apartment on July 2, 2021. To prove this, she authenticated text messages that she sent to her family on July 2 and July 3, in which she stated that B.F. was working out with Gibson, and that Gibson would be dropping off her son at a family party on July 3. T.F. testified that she allowed B.F. to spend the night because his father had passed away suddenly from cancer on March 1, 2021, and she thought that Gibson, who B.F. had known for a little while, was a good person who could help him through the difficult time. Separately, but importantly, T.F. identified photographs depicting a birthmark B.F. has on his buttocks.

{¶ 24} B.F. testified that he met Gibson at a football camp the summer before going into his freshman year. Gibson then became his trainer at Fast Track Performance. After B.F.'s dad died, he developed a closer relationship with Gibson. B.F. testified that he would go over to Gibson's apartment, and they would watch movies and Gibson would provide alcohol. B.F. stated that he drank with Gibson four or five times.

9.

**{¶ 25}** B.F. knew R.R. from playing football together. On one occasion, while B.F. and R.R. were at Gibson's house together, Gibson showed B.F. a picture of R.R.'s penis that he had on his phone. Gibson told him that he has pictures of everybody's penises. B.F. believed that Gibson was attempting to pressure him into sending a picture of his own penis, which he never did.

**{¶ 26}** B.F. then testified about the night he spent at Gibson's apartment in July 2021. He recalled waking up the next morning feeling "icky," explaining that he felt moist at his butt and thinking something was not right. He did not confront Gibson or tell anyone else about it. The State then showed B.F. six separate short videos taken from Gibson's phone. In the first three videos, Gibson is anally penetrating a person with his penis. In the fourth and fifth videos, Gibson is rubbing his penis near the person's butthole. In the sixth video, Gibson pulls down the person's underwear and uses his finger to spread the person's butt cheeks near the anus. In each of the videos, the person is not moving or reacting and is seemingly unconscious. B.F. identified himself as the victim in the videos based on the shorts and underwear that the person was wearing as well as a birthmark seen on the person's buttocks. The birthmark appeared to be the same as that identified by T.F.

**{¶ 27}** On cross-examination, B.F. was asked about an interview that he did with one of the prosecutors in which he reported that on the morning of July 3, 2021, his penis felt wet, not his butt. B.F. testified that he did not remember the interview well. He further stated that he reported before that it was his butt that felt wet.

10.

**{¶ 28}** Finally, B.F. testified that he stayed at Gibson's apartment one or two times after July 2, 2021, including the night that R.R. was over in March 2022. B.F. did not remember anything unusual happening on that occasion.

**{¶ 29}** Next, Heidi Malott testified for the State as an expert witness in child sexual abuse disclosure. She provided general information on the reasons why children might not disclose the abuse immediately. Malott did not interview R.R. or B.F. herself, and while she did review two other interviews of them, she did not include that information in her report.

**{¶ 30}** Caitlin Anthony, a public safety intelligence manager for the Ohio Narcotics Intelligence Center, testified as an expert in the field of forensic electronic device analysis. This was her first time being certified as an expert witness. Anthony testified that an analysis of Gibson's phone showed that it had several GPS fixes showing its location at Fast Track Performance between 11:25 a.m. and 4:17 p.m. on July 2, 2021. The phone then had a GPS fix at Rusty Taco in Maumee, Ohio at 6:44 p.m. Following that, it had several GPS fixes at Gibson's apartment in Bowling Green from 12:51 a.m. to 1:43 a.m. on the morning of July 3, 2021. Finally, the phone had several GPS fixes at Fast Track Performance from 1:22 p.m. to 4:29 p.m. on July 3, 2021.

**{¶ 31}** Anthony additionally testified that the six Snapchat videos were taken between 12:51 a.m. to 1:43 a.m. on July 3, 2021, from Gibson's apartment. She also identified a text message sent from Gibson's phone at 6:34 p.m. on July 2, 2021, which stated "[B.F] staying tonigyht (sic) was gonna come over." Lastly, she noted that she

11.

found activity from the Grindr app on Gibson's phone just around 12:03 a.m. on July 3, 2021.

{¶ 32} The State then played two jailhouse phone calls in which Gibson was talking about the case. In the phone conversations, he said that the Snapchat videos were of him having sex with "some random dude off of Tinder." The State also elicited testimony of a text message conversation wherein Gibson stated that he had a timestamped video of him having anal sex with a white person at 1:30 a.m.

{¶ 33} The State's final witness was Lieutenant Rod Smith of the Wood County Sheriff's Office. Smith testified that through his investigation he discovered that R.R. sent more than one picture of his penis to Gibson in February 2022.

{¶ 34} Smith also testified that he executed a search warrant at Gibson's apartment in April 2023. There, he found Gibson's bedding, which matched the bedding shown in the Snapchat videos. Additionally, Smith identified a photograph taken from Gibson's phone showing B.F. working out on July 2, 2021. B.F. was wearing the same clothes as the person in the Snapchat videos. Smith also took a picture of B.F.'s birthmark, and he testified that it matched the birthmark visible in the Snapchat videos.

{¶ 35} Following Smith's testimony, the State rested. Gibson moved for an acquittal pursuant to Crim.R. 29, which the trial court denied. Gibson then presented his defense.

{¶ 36} J.W. testified that he has known Gibson for approximately six years, having met him at a football camp while J.W. was still in high school. J.W. stated that he

12.

messages Gibson on Snapchat, and he described Gibson's messages as "Goofy," meaning that they are funny about common sense things. J.W. testified that nothing inappropriate has ever happened between him and Gibson.

{¶ 37} J.B. testified that he was an intern at Fast Track Performance working with Gibson. He described that the high school athletes they trained engaged in a lot of "locker room" talk that contained sexual innuendo and back and forth banter. J.B. further stated that he and Gibson messaged each other through Snapchat and he never received anything that he would consider crude or sexual in nature.

{¶ 38} D.J. testified that he worked with Gibson at Fast Track Performance and they were best friends. Like J.B., D.J. explained that the high school athletes would tell a lot of crude jokes and use sexual innuendo. He testified that as a trainer he would joke with them in a similar manner to build a relationship. But no one ever took any of those jokes or innuendos seriously. Finally, D.J. asserted that he observed Gibson training the athletes and never saw anything concerning.

{¶ 39} As the final witness, Gibson testified in his own defense. He testified that he began working at Fast Track Performance in October 2020, and he moved to his apartment in Bowling Green in March 2021. On cross-examination, Gibson admitted that he was also contracted through Fast Track Performance to be a Bowling Green High School strength and conditioning coach. In that role, he would "be an authority figure overseeing or overlooking a subordinate figure." He clarified later, however, that he

13.

technically did not work for the school and was told, "very firmly," that he was not on staff and was not a coach at the school.

{¶ 40} He met B.F. at a football camp in 2017 and began training him at Fast Track Performance in April 2021. On July 2, 2021, B.F. was his last athlete of the day, and he was responsible for taking him home to his aunt's house in Holland, Ohio. The two stopped and got food at Rusty Taco in Maumee, which is near Holland, and which is north of Fast Track Performance in the opposite direction of Bowling Green. Gibson stated that he was 100 percent certain that he had dropped B.F. off that night. He testified that he texted his friend R.K. that night because B.F. was going to stay over, but he decided to drop B.F. off when he learned that R.K. was out of town because he did not "want him at my house by myself."

{¶ 41} Gibson further testified that B.F. would stay at his apartment on occasion, and they would watch sports, go out to eat, or he would cook. Gibson admitted that B.F. drank alcohol at his apartment to the point of intoxication. He explained that with everything B.F. was going through, occasionally B.F. would message him saying that he just needed "to get f* * * ed up." Gibson thought that he was helping B.F. by giving him an outlet, but upon reflection realized that he should not have given alcohol to a minor.

{¶ 42} Regarding the Snapchat videos, Gibson testified that he did not know who the other person was in the video. He explained that it was a contact from the Grindr app, and he did not usually get names because it was a casual hookup. Gibson admitted to being a promiscuous gay man. He testified, however, that he did not publicize his sexual

14.

life or orientation to people in order to avoid the stigma associated with a gay man around high school boys. Gibson also testified that he has seen the underwear depicted in the video elsewhere, explaining that he thought it was an American Eagle brand, and he actually had purchased the same underwear for one of his friends. He denied that B.F. was the person in the video, and he strenuously denied ever attempting to do anything sexual with B.F. He theorized that B.F. may have felt wet from vomiting or urinating on himself when he was intoxicated.

{¶ 43} Lastly, Gibson testified that he did invite R.R. over to his apartment on several occasions. Generally, they would get food and watch sports. Gibson denied laying on the couch at any time with R.R., stating that he was usually in his chair and everyone else was on the couch. When R.R. got ready to leave, Gibson would give him a hug, "like I do everybody." As to the sexual allegations, Gibson denied pushing R.R. into a bedroom, taking down his pants, and putting his penis in his mouth. He also denied asking for or receiving pictures of R.R.'s penis. He stated that R.R. and a third person would joke about sending pictures to Gibson, but he would quickly "shut that down" and tell them not to mention it again.

{¶ 44} After Gibson's testimony, he renewed his Crim.R. 29 motion, which the trial court again denied.

{¶ 45} Ultimately, the jury returned with a verdict of guilty on all of the non-dismissed counts in the indictments, with the exception of the count of importuning, for

15.

which it found Gibson not guilty. For these offenses, the trial court imposed a total indefinite term of 60 1/2 years to 66 years in prison.

## II. Assignments of Error

{¶ 46} Gibson timely appeals his judgments of conviction, asserting two assignments of error for review:

> 1. The trial court erred in denying Appellant's Crim.R. 29 motion.
>
> 2. The jury's verdict was against the manifest weight of the evidence presented at trial.

## III. Analysis

{¶ 47} In his first assignment of error, Gibson argues that the trial court erred when it denied his Crim.R. 29 motion for acquittal. He contests all his convictions except those for failure to comply with underage alcohol laws.

{¶ 48} "A motion for acquittal under Crim.R. 29 challenges the sufficiency of the evidence." *State v. Ide*, 2024-Ohio-5527, ¶ 31 (6th Dist.), citing *State v. Brinkley*, 2005-Ohio-1507, ¶ 39. "The denial of a motion for acquittal under Crim.R. 29 'is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.'" *Id.*, quoting *State v. Tenace*, 2006-Ohio-2417, ¶ 37. In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

16.

**{¶ 49}** In case No. 2022-CR-0241 Gibson was convicted of two counts of sexual battery in violation of R.C. 2907.03(A)(9), which provides,

No person shall engage in sexual activity with another; cause another to engage in sexual activity with the offender; or cause two or more other persons to engage in sexual activity when any of the following apply:

. . .

(9) The other person, or one of the other persons, is a minor, and the offender is the person's athletic or other type of coach, is the other person's instructor, is the leader of a scouting troop of which the other person is a member, or is a person with temporary or occasional disciplinary control over the other person.

He argues that the evidence was insufficient to demonstrate that he put R.R.'s penis in his mouth twice. He further argues that the evidence was insufficient to demonstrate that he was a coach.

**{¶ 50}** Regarding the former, R.R. testified that Gibson put R.R.'s penis in his mouth on two separate occasions. Direct testimony from the victim satisfying the elements of the offense is sufficient to support a conviction.

**{¶ 51}** As to whether the evidence was sufficient to demonstrate that Gibson was a coach, Mason Roth testified that Gibson was the strength and conditioning coach for the basketball program, he considered Gibson to be a coach, held him out to the players as a coach, and referred to him as Coach Gibson. Roth also testified that Gibson supervised the weight room and was in complete control over the "day-to-day" activities of the strength and conditioning program. Moreover, Gibson himself admitted on cross-examination that he was contracted to be the strength and conditioning coach and that he

17.

would be "an authority figure overseeing or overlooking a subordinate figure," although he clarified on re-direct that he technically did not work for the school, was not on staff, and was not a coach at the school. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could find that Gibson was a "athletic or other type of coach," "instructor," or "a person with temporary or occasional disciplinary control" as used in R.C. 2907.03(A)(9).

{¶ 52} Gibson's convictions for sexual battery, therefore, are not based on insufficient evidence.

{¶ 53} He was also convicted in Case No. 2022-CR-0241 of two counts of illegal use of minor or impaired person in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3) for soliciting and possessing photographs of R.R.'s penis. That section states,

> No person shall do any of the following:
>
> . . .
>
> (3) Possess or view any material or performance that shows a minor or impaired person who is not the person's child or ward in a state of nudity, unless one of the following applies:
>
> (a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance.

18.

(b) The person knows that the minor's or impaired person's parents, guardian, or custodian has consented in writing to the photographing or use of the minor or impaired person in a state of nudity and to the manner in which the material or performance is used or transferred.

R.C. 2907.323(A)(3).

{¶ 54} Gibson argues that no evidence was presented as to when the pictures were sent or possessed. He also argues that there was no evidence to establish that the photographs were taken, sent, or received in Wood County. Lastly, he notes that the photographs were never discovered on his phone, his Snapchat account, or R.R.'s phone.

{¶ 55} Here, although the pictures were not recovered or presented as evidence, R.R. testified that he believed he sent two or more pictures of his penis to Gibson before the sexual assaults occurred in March and April 2022, Detective Smith testified that R.R. sent more than one picture in February 2022, and B.F. testified that Gibson showed him the pictures in March 2022. Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could find that Gibson possessed two pictures of R.R. in a state of nudity in February 2022.

{¶ 56} Regarding the location of the offense, "[a]lthough it is not a material element of the offense charge, venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant." *State v. Halka*, 2021-Ohio-149, ¶ 32 (6th Dist.), quoting *State v. Headley*, 6 Ohio St.3d 475, 477 (1983). R.C. 2907.323(A)(3) prohibits the possession of material showing a minor in a state of nudity. The material in this case was alleged to be on Gibson's personal cellphone. At the time of the offense,

Gibson lived and worked in Wood County, Ohio. It is reasonable to conclude, therefore, that he had his cellphone with him at those times and thus possessed the material in Wood County, even though no evidence was presented showing where the images were sent or received.

{¶ 57} Gibson's convictions for illegal use of a minor in nudity-oriented material are not based on insufficient evidence.

{¶ 58} Turning to case No. 2023-CR-0181, Gibson was convicted of three counts of rape in violation of R.C. 2907.02(A)(1)(c), which states,

> (A)(1) No person shall engage in sexual conduct with another when any of the following applies:
>
> . . .
>
> (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

The offenses were based on three of the Snapchat videos, labeled at the trial as Exhibits 5, 6, and 7.

{¶ 59} In his assignment of error, Gibson argues that Exhibit 5 does not show penetration. Under R.C. 2907.01(A), "'[s]exual conduct' means . . . anal intercourse . . . . Penetration, however slight, is sufficient to complete vaginal or anal intercourse." *State v. McGee*, 2022-Ohio-864, ¶ 17 (6th Dist.). In the video, the tip of Gibson's penis, which

is lubricated, can be seen pressing against and slightly entering the anus of the victim. This is sufficient to demonstrate that he performed sexual conduct with the victim.

{¶ 60} Gibson also challenges his three convictions for rape on the grounds that the person depicted in the videos was not B.F. He likewise challenges his three convictions for gross sexual imposition and his six convictions for pandering sexually-oriented matter involving a minor or impaired person for the same reason. He does not otherwise contest the elements of those offenses.

{¶ 61} Gibson argues that he testified that the person in the video was a random individual he met through the Grindr app. He also testified that he was 100 percent sure that he dropped off B.F. at his aunt's house and that B.F. did not stay the night with him. Contradicting Gibson's testimony, however, was T.F.'s testimony that her son spent the night with Gibson on July 2, 2021, and the text messages supporting that fact. In addition, B.F. identified himself in the videos by a birthmark on his buttocks and by the clothes he was wearing. A picture showing B.F.'s birthmark taken by Detective Smith was entered into evidence for comparison and appears to be the same as what is seen in the videos. Moreover, in a picture of him working out earlier in the day on July 2, 2021, B.F. appears to be wearing the same clothes as the person seen in the video taken later that night.

{¶ 62} Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could find that B.F. was the person in the Snapchat videos. Gibson's

21.

convictions for rape, gross sexual imposition, and pandering sexually-oriented matter involving a minor, therefore, are not based on insufficient evidence.

{¶ 63} Finally, Gibson challenges his conviction for disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(1), which provides,

> (A) No person, with knowledge of its character or content, shall recklessly do any of the following:
>
> (1) Directly sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile, a group of juveniles, a law enforcement officer posing as a juvenile, or a group of law enforcement officers posing as juveniles any material or performance that is obscene or harmful to juveniles.

Gibson contends that the State did not present any evidence to establish when the pictures of R.R.'s penis were taken or sent and the State failed to produce the pictures in question.

{¶ 64} Contrary to Gibson's argument, the timing of when the pictures were taken by R.R. or sent to Gibson is not an element of the offense. Instead, the elements were satisfied—notwithstanding that the pictures were not produced or entered into evidence—by R.R.'s testimony that he sent the pictures to Gibson, and B.F.'s testimony that Gibson showed him the pictures on or around March 27, 2022, in what he believed was an attempt to pressure B.F. into doing the same. Based on these facts, a rational trier of fact could have found Gibson guilty of disseminating matter harmful to juveniles. His conviction, therefore, is not based on insufficient evidence.

{¶ 65} Accordingly, because Gibson has not demonstrated that his convictions are based on insufficient evidence, his first assignment of error is not well-taken.

22.

{¶ 66} In his second assignment of error, Gibson argues that his convictions are against the manifest weight of the evidence. In support, he challenges the credibility of the testimony and evidence presented against him.

{¶ 67} When reviewing a manifest weight claim, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lang*, 2011-Ohio-4215, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, quoting *Thompkins* at 387.

{¶ 68} Gibson first challenges the jury's determination that he was a "coach." As discussed above, Roth testified that while Gibson was not a basketball coach and had no involvement in basketball decisions, he considered him the strength and conditioning coach, held him out as a coach, and introduced him to players as "Coach Gibson." R.R. testified that Gibson was a "trainer, slash, coach." Gibson himself described his role as a coach although he was not on the basketball staff as a coach. Arguing otherwise, Gibson points to B.F.'s testimony that he was a trainer, not a coach. B.F., however, was not on the basketball team and Gibson would not have been a coach to him. Moreover, Gibson's status as a coach is only relevant to the charges of sexual battery against R.R.

23.

As to those charges, considering the testimony of Roth, R.R., and Gibson, the jury did not clearly lose its way when it determined that Gibson was a "coach."

{¶ 69} Next, Gibson contests the evidence demonstrating that he possessed pictures of R.R.'s penis. As with his sufficiency claim, he notes that the pictures were never found on any phone or entered into evidence. He also cites Ro.R.'s testimony that he was alerted to "questionable" images by an app, but the app did not show the images. Relatedly, Gibson contests the evidence supporting the claim that he put R.R.'s penis in his mouth. In both cases, the evidence turns on the credibility of the witnesses.

{¶ 70} Although this court considers the credibility of witnesses when performing a manifest-weight review, special deference is nonetheless extended to the jury's credibility determinations given that "it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor." *Toledo v. Bryant-Bey*, 2023-Ohio-4798, ¶ 33 (6th Dist.), citing *State v. Fell*, 2012-Ohio-616, ¶ 14 (6th Dist.).

{¶ 71} Gibson contends that R.R.'s testimony was not credible. He asserts that R.R.'s story changed between his first interview with the police, his second interview, and his testimony at trial. Specifically, he points to R.R.'s testimony that B.F. burst into the room on March 27, 2022, a statement that he did not make in his earlier police interviews. In addition, R.R. testified that B.F. left Gibson's apartment that night, but

B.F. testified that he stayed. Gibson also implies that the March 27, 2022 incident did not happen because R.R. came back to the apartment approximately one week later.

{¶ 72} Upon review, this is not the exceptional case where the evidence weighs heavily against the conviction. As to the charge involving Gibson's possession of the pictures, R.R. testified that he sent them to Gibson. B.F. corroborated that by stating he saw those pictures when he was at Gibson's apartment with R.R. in March 2022. As to the sexual battery charges, R.R. disclosed the offenses shortly after they occurred and has consistently maintained that Gibson put his penis in his mouth on two occasions. Any inconsistencies between R.R.'s various statements describing the events involve minor details that are tangential to the events themselves. Further, no evidence was presented regarding any motive R.R. would have to fabricate the allegations. The jury in this case was able to view R.R.'s testimony and make a credibility determination, and this court sitting as a thirteenth juror sees no reason to overturn that determination. Gibson's convictions for illegal use of a minor in nudity-oriented material, sexual battery, and disseminating matter harmful to juveniles are not against the manifest weight of the evidence.

{¶ 73} Finally, Gibson challenges the evidence supporting his convictions for rape, gross sexual imposition, and pandering sexually-oriented matter involving a minor. In particular, he argues that his cellphone dump was performed using outdated software, that the analyst had only attended an introductory class on the extraction software, yet she

25.

was certified as an expert, that the cellphone locations were only an approximation, and that the analyst did not perform a keyword search for the Grindr app.

{¶ 74} The evidence in this case proving Gibson's location on July 2-3, 2021, is believable. Despite a newer version of the extraction software being available, Gibson does not strenuously contend that the information extracted from his phone was incorrect. Furthermore, he admitted that he was the person in the Snapchat videos, and that they were taken in his apartment in the early morning hours of July 3, 2021. A subsequent search of the same apartment years later discovered that his bedding remained the same. The jury, therefore, did not lose its way when it determined that Gibson was in his apartment using Snapchat to film his sex acts in the early morning hours of July 3, 2021.

{¶ 75} Gibson also contends that the person in the video was a random individual he met through the Grindr app. The weight of the evidence, however, demonstrates that it was B.F. The person was wearing the same clothes that B.F. was photographed in earlier on July 2, 2021. In addition, B.F.'s mother testified that he had a birthmark on his buttocks, Detective Smith took a picture of that birthmark, and the person in the video had a similar looking birthmark in the same location. Perhaps most importantly, B.F. testified that he was the person in the video, identifying himself by the birthmark and the clothing that he was wearing.

{¶ 76} From this evidence the jury did not clearly lose its way and commit a manifest miscarriage of justice when it found that Gibson committed the offenses of rape,

gross sexual imposition, and pandering sexually-oriented matter involving a minor based on the six Snapchat videos.

{¶ 77} Accordingly, because Gibson's convictions are not against the manifest weight of the evidence, his second assignment of error is not well-taken.

### IV. Conclusion

{¶ 78} For the foregoing reasons, the judgments of the Wood County Court of Common Pleas are affirmed. Gibson is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                                      
_____
                                                             JUDGE
Gene A. Zmuda, J.

Charles E. Sulek, P.J.
CONCUR.
                                            
_____
                                                             JUDGE

_____
                                                             JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.